DUNCAN *vs* POTTS.

1. An occupant of the public lands of the United States, may maintain trespass, *quare clausum fregit*, against a stranger.
2. The occupancy by one, of the public domain, forms, so far, at least, as trespasses by a stranger are concerned, a tenancy at will; and not a mere tenancy from year to year.

This was an action of trespass, *quare clausum fregit;* and was prosecuted by Duncan, against Potts, in Bibb Circuit Court.

The declaration having been demurred to, and the demurrer sustained; an amended declaration was subsequently filed. This declaration complained against the defendant, for, that the said plaintiff, theretofore, to wit, on the the twenty-seventh day of March, *Anno Domini*, one thousand eight hundred and thirty, in the County of Bibb, being peaceably and lawfully in possession of a certain improvement, consisting of twelve acres of cleared land; under a good fence, with the appurtenances thereunto belonging, on the public lands, belonging to the government of the United States; and as tenant at will,

to the government of the United States, situated on the fractional section number fourteen, in township twenty-two of range nine, on the Cahawba river: and, being so peaceably and lawfully possessed thereof, as aforesaid, the said defendant, on the day and year aforesaid, and on divers other days and times, between that day and the commencement of the said action, to wit, at the County aforesaid, with force and arms, unlawfully did break and enter in, and upon the aforesaid improvement, and then and there, in a forcible manner, and with a strong hand, ejected, expelled, put out, amoved and dispossessed the said plaintiff, from and out of the possession, use, occupation and enjoyment of his said improvement aforesaid, with the appurtenances aforesaid; and kept and continued the said plaintiff so ejected, expelled, put out, amoved and dispossessed, from and out of the possession, use, occupation and enjoyment of the said improvement, for a long space of time, to wit, for the space of twelve months then next thereafter; and, during all that time, the said defendant took, had and received to his own use and benefit, all the issues and profits of the said improvement aforesaid, being of great yearly value, to wit, of the yearly value of two hundred and fifty dollars. Whereby the said plaintiff, during all that time, not only lost the issues and profits of his said improvement aforesaid, with the appurtenances aforesaid, but was hindered and deprived of the use and means of cultivation of the said improvement, so consisting of twelve acres of cleared land, under good fence as aforesaid; and was forced and obliged to, and did necessarily lay out, and expend large sums of money, amounting, in

the whole, to the sum of two hundred and fifty dollars, in and about recovering the possession of the aforesaid improvement, with the appurtenances aforesaid, in a certain action of *forcible detainer*, prosecuted by the said plaintiff against the said defendant, according to the statute in such case made and provided, for the recovery of the possession of the aforesaid improvement; and finally adjudged, decided and determined in favor of said plaintiff, against said defendant, before the commencement of this suit, in the Circuit Court of Bibb County aforesaid—as, from the records and proceedings of the aforesaid Circuit Court, more fully appeared; which said judgment was in full force and unreversed, &c.

*Secondly*—Another count of the same character.

A demurrer to this amended declaration, being filed by the defendant, the same was sustained, and judgment entered accordingly; from which the plaintiff prosecuted a writ of error.

*Stewart*, for the plaintiff in error—
*Freeman, contra.*

SAFFOLD, J.—The question presented for consideration, relates to the sufficiency of the plaintiff's amended declaration.

The action is trespass. The declaration contains two counts, charging, in substance, that Duncan, the plaintiff, was peaceably and lawfully possessed of a certain improvement, consisting of twelve acres of cleared land, which was inclosed, &c.; that it was part of the public lands, belonging to the government of the United States, which he held, as tenant

at will to the government aforesaid; situated, &c.: and that, he being so peaceably and lawfully possessed thereof, as aforesaid, the said defendant, on the ——— day of ———, aforesaid, and on divers other days and times between that day and the commencement of the writ, in the County aforesaid, with force and arms, broke and entered in and upon the said improvement, and then and there ejected, expelled and dispossessed the plaintiff of the same, and kept him out—thereby depriving him of the use, enjoyment and profits of the same, for a long time, to wit, for twelve months, &c.

The declaration contains various other averments, such as are used in declarations of this description: it makes reference to a recovery by the plaintiff, against the defendant, of the premises in question, in an action for a *forcible detainer;* and charges that the plaintiff had been obliged to expend large sums of money in and about the said recovery, &c. To this declaration the defendant demurred, and the Court sustained the demurrer and gave judgment for the defendant.

This judgment is now assigned for error. Under this assignment, two questions only have been discussed by the counsel—

1st. Is an occupant of the public lands of the United States, entitled to prosecute the action of trespass?

2dly. Is it necessary, that one suing, as tenant at will, should aver, in his declaration, that he held the land by grant?

1. It is a fact of general notoriety, that a large portion of the inhabitants of this State have been

occupants of the public lands: that most parts of our country were settled before the government had parted with her title to the soil; and that, even now, considerable numbers continue to occupy and cultivate the public domain, without any objection or interruption from the government. Without legal protection, to persons in this situation, strife and contention would be incessant—the peace and quiet of society would be constantly disturbed, and the strong and violent would give law to the weak and inoffensive.

But, it is not only here, but elsewhere, that many may be found in the occupancy of lands, to which they can show no legal title; and wherever this is the case, if prior peaceable possession did not give a preference in the right of enjoyment, the same consequences would arise. This is the reason of the common law, that any possession is sufficient to sustain trespass against a wrong-doer, or a person, who can not make out a title *prima facie*, entitling him to possession. It is held, that "a tenant for years, a lessee at will, and a tenant at sufferance, may support this action against a stranger, or even against his landlord, unless a right of entry be expressly or impliedly reserved."[a]

Also, it is said, "The action of *trespass vi et armis* is termed a possessory action, to distinguish it from those actions in which the plaintiff must show a title. Being founded on an injury to the possession, it is essential that the plaintiff should be in possession of the close, at the time when the injury is committed; but, as against a stranger or wrong-doer, it is immaterial whether such possession be founded

[a] 1 Chit. Pl. 178, & authorities.

on a good title or not. Even a tortious possession will support trespass against a wrong-doer."[a]

a 2 Wheat.
Selw. 10:8

Various other authorities to the same effect, might be cited, but the principle is considered too clear to require it.

2. It remains to be considered, how a tenancy at will, for the purposes of this action, can be created.

The defendant's counsel insists on the authority of Chancellor *Kent*,[b] " that a tenancy at will can not arise, without express grant or contract; and that all general tenancies are, constructively, tenancies from year to year."

b 4 Kent's C
210

Such, it is true, is the language of that learned commentator. He, however, in the same page, explains, and shows that this was not the original nature of estates at will; that Lord *Mansfield* had observed,[c] " that an infinite quantity of land was holden, in England, without lease;" and that they were all, therefore, in a technical sense, estates at will; but such estates are said to exist only nationally; and where no certain term is agreed on, they are construed to be tenancies from year to year.

c 3 Burr
1607.

Further, however, he says, (page 112,) "The reservation of an annual rent, is the leading circumstance, that turns leases for uncertain terms, into leases from year to year. If the tenant be placed on the land, without any terms prescribed, or rent reserved, and as a mere occupier, he is strictly a tenant at will.

A strict tenant at will, in the primary sense of that tenancy, is not entitled to notice to quit: nor is a tenant, whose term is to end at a certain time—for, in that case, both parties are apprised of their rights

and duties. The lessor may enter on the lessee, when the term expires, without further notice. Except, for the purpose, *of notice to quit, tenancies at will seem even still to retain their original character.* See *Jackson* vs *Bradt;*[a] *Nichols* vs *Williams.*[b]

The principles of the English decisions, which are said, in many cases, to have converted tenancies at will, into leases from year to year, can have no application to an interest like the one in question—to an interest accruing to one from his occupancy and improvement of the public domain; the absence of any obligation to pay rent, or of any necessity for notice to quit, distinguishes this from the modern idea of a tenancy from year to year.

While the government chooses to regard the occupier not as a trespasser, but to permit him to continue in the possession and enjoyment of the land, such acquiescence can constitute no other than a tenancy at will, according to the original notion of such estates.

As an indication of the general assent of the government to the existence of such tenancies, reference may be made to the several acts of Congress, of recent date, allowing to such occupants a preference, in becoming the purchasers of the lands so occupied: also to the act, authorising the executive, when deemed necessary, to remove settlers from the public lands; and to the orders which, at different times, in the history of this country, have been issued, for the removal of such as have acted offensively to the government, or who have asserted any right to the soil, inconsistent with the nature of a tenancy at will.

It is also worthy of notice, that the judicial deci-

[a] 2 Caine's R. 169.
[b] 3 Cow. 75.

sions of this State, have uniformly recognised the claim or interest of occupiers of the public lands, as estates at will, and such as are entitled to protection against disseisors, intruders or other *tort-feasors*, under the act "concerning forcible entries and detainers." Such suits have often been sustained, in most of the Circuit Courts of the State, and the right to prosecute them has been fully sanctioned by this Court.

In the case of *M'Donald* vs *Gayle*,[a] it was held, that a petitioner, who entitled himself *tenant at will, on the lands of the United States*, had a right to maintain the writ of forcible entry and detainer; that the person complaining, was required to set forth his estate in the land; and the term "estate," embraced the interest of tenants at will, as well as other tenants. [a]Ala. R. 98

But, it is argued, for the defendant, that the plaintiff alleges in his declaration, that prior to the institution of this suit, he had successfully prosecuted an action of forcible detainer, against the defendant, for the recovery of this interest; and that, from this, it may be inferred, the original entry was lawful and peaceable; that the plaintiff must have abandoned the premises, and consequently could have had no right to prosecute this action of trespass.

To this, it is considered a sufficient reply, that this averment is not conclusive, as to the nature of the injury complained of: the forcible detainer may have succeeded a forcible entry; as the plaintiff

5 s & p.        12

has averred his own peaceable possession, and the forcible entry and ouster of the defendant, when issue shall be taken on the facts, he will be held to proof of these essential allegations, according to the legal acceptation of the terms.

From these views, we are of opinion the judgment below must be reversed, and the cause remanded.