# Southern Railway Co. *v.* Hayes, *et al.*

*Trespass to Realty.*

(Decided May 1, 1913.    Rehearing denied June 19, 1913.
62 South. 874.)

1. *Abatement and Revival; Another Action Pending; In Equity.*—The pendency of a suit in equity is not grounds for a plea in abatement of an action at law; the remedy is to apply to equity to require the movant to elect as to which action he will first prosecute to judgment.

2. *Corporations; Actions Against; Misnomer.*—A plea as to the name of the corporation "Southern Railway Company" and "The Southern Railway Company" is frivolous and technical and will not be considered.

3. *Appeal and Error; Harmless Error; Pleading.*—The sustaining of demurrers to pleas setting up matter available under the general issue is harmless, where the general issue is pleaded.

4. *Discovery; Interrogatories; Answers as Evidence.*—The answers of a party to interrogatories propounded by the adverse party under the statute are treated as pleading and evidence, and the party taking them may or may not introduce them in evidence, and the party answering cannot offer his own answers in evidence; but where the party taking interrogatories of the opposite party, introduces the answers in evidence, he must introduce them as a whole.

5. *Same; Responsiveness.*—Answers to interrogatories taken under the statute need not be responsive as the party required to answer may explain or avoid his answer.

6. *Same; Failure to Answer; Penalty.*—A party propounding interrogatories to the adverse party under the statute may insist on complete answers, or move to have the statutory penalties enforced for failure to answer.

7. *Trespass; Land; Damages.*—The fact that a tree was cut down, a fence torn down, and the soil on the land taken up, and that these wrongs were committed in the yard of the dwelling house, over protest, if sustained by the evidence is available on the issue of punitive damages, and hence, the court did not err in refusing to strike such allegations from the complaint.

8. *Same; Defenses.*—It is no defense to an action for trespass to real estate that one of the plaintiffs was a married woman and lived with her husband and children on the land at the time of the trespass.

9. *Same; Evidence.*—Evidence of a conversation between plaintiff and the agent of defendant who is alleged to have authorized the trespass, had at the time of the trespass, wherein plaintiff protested against the trespass, and the agent insisted that defendant could do the act complained of was admissible in an action by plaintiff against the principal of the agent for trespass to real estate.

10. *Same.*—On the question of punitive damages in an action for trespass to realty, testimony disclosing the character and intent of the wrong doer is admissible, although inadmissible to show actual damages.

11. *Same; Jury Question; Title.*—Under the evidence in this case the issue of the title of plaintiff, claiming title by adverse possession against defendant having the legal paper title, was for the jury.

12. *Same; Wrongful Entry by Owner.*—Where the action was trespass to realty, and defendant shows his ownership of the land and right to entry, he shows a complete defense though the entry was by force, and over the protest of plaintiff, the injury suffered by plaintiff by use of force by defendant being recoverable in an appropriate action therefor.

13. *Same; Right of Recovery.*—By showing possession only, a plaintiff may recover in an action of quare clausum fregit as against a mere trespasser, but he cannot recover as against the true owner having immediate right of possession.

14. *Same.*—The action of quare clausum fregit is an action for damages for injury to land, or the possession thereof, and where plaintiff does not own the land and has no right to possession against defendant, there can be no recovery; whatever damages plaintiff may have suffered in his person or as to other property.

APPEAL from Morgan Circuit Court.
Heard before Hon. D. W. SPEAKE.

[Southern Railway Co. v. Hayes, et al.]

Action by Fannie Hayes and others against the Southern Railway Company for trespass quare clausum fregit. From a judgment for plaintiffs, defendant appeals. Reversed and remanded for another trial.

The defendant moved to strike from the complaint the following averments: "And for cutting a tree thereon and for tearing down a fence and digging up the soil thereon." Also the following: "Plaintiff avers that said wrongs and injuries were committed by defendant in the yard of the home and dwelling of these plaintiffs, and within a few feet of the dwelling house, and over the protest and expostulations of Fannie Hayes, mother of the other plaintiffs, and by Ben Hayes, husband of Fannie Hayes and father of the other plaintiffs."

The following are the pleas referred to:

"(2) That at the time of the alleged trespass the lands in question were the property of this defendant."

"(4) Prescription of 20 years.

"(5) That, at the time of the commencement of this action and of the alleged trespass, the plaintiff Fannie Hayes was a married woman, her husband being one Ben Hayes, and they with their children, the infant plaintiff, were living on the premises involved in this case at the time mentioned; that said Ben Hayes was and is the head of the household and proprietor of the premises, and he alone is the proper person to bring this action."

WERT & LYNNE, for appellant. The court erred in sustaining demurrers to defendant's plea in abatement. —*Foster v. Napier,* 73 Ala. 595, and authorities cited; *Cannon v. Brame,* 45 Ala. 262. The corporation must be sued by its true name.—1 Blackstone 474. The motion to strike the averments of the complaint was

the proper practice and the motion should have been granted.—*C. of Ga. v. Keyton,* 41 South. 921; *Brink-meyer v. Bethea,* 139 Ala. 376; *Gosden v. Williams,* 44 South. 612; *Buck v. L. & N.,* 48 South. 699. The husband is the proper person to bring the suit, and the wife was improperly joined.—*Strauss v. Leipf,* 101 Ala. 439. Pleas 2, 3 and 4 were proper.—*Dean v. Fail,* 8 Port. 491; *McInery v. Irvin,* 90 Ala. 276. Pleas 5 and 6 were good.—Authorities supra. The court erred in excluding portions of the answer to the interrogatories. —*Sullivan T. Co. v. L. & N.,* 163 Ala. 125; *Carwile v. Franklin,* 51 South. 396; *Prestwood v. Carleton,* 50 South. 254; *Saltmarsh v. Bower,* 22 Ala. 221. Written charge No. 1 should have been given.—2 Thomp. on Trial, sec. 2243, et seq. Only nominal damages were recoverable.—60 Atl. 643; 85 N. W. 138; 26 S. E. 19; 47 S. W. 675; 30 S. E. 21. Counsel discuss other assignments of error, but without further citation of authority.

KYLE & HUTSON, and E. W. GODBEY, for appellee. Any "paper title" referred to by the court which the railroad may have had, could not palliate, much less justify the admitted forcible breaking and entry (into the restricted curtilage of a long and peaceably occupied dwelling) without notice, by foremen, engineer. plows and a host of negroes and mules, all making, simultaneously, the utmost use of the various instruments of destruction, by sheer main strength and awkwardness. *Morris v. Robinson,* 80 Ala. 291, 294; *Iron Mtn., etc., R. Co. v. Johnson,* 30 L. Ed. 505, 119 U. S. 609; *Denver, etc., R. Co. v. Harris,* 30 L. Ed. 1147, 122 U. S. 606; *State v. Bryant,* 103 N. C. 436; *State v. Davis,* 14 L. R. A. 206; *Mosseller v. Deaver,* 106 N. C. 494; *Barnes v. Martin,* 15 Wis. 240, 82 Am. Dec. 672; *Croff v. Ballin-*

*ger,* 18 Ill. 200, 65 Am. Dec. 735; *Sinclair v. Stanley,* 69 ex. 718; *Westcott v. Arbuckle,* 12 Ill. App. 577; *Reeder v. Burdy,* 41 Ill. 279; *Emerson v. Sturgeon,* 54 Mo. 404; *Dilworth v. Fee,* 52 Mo. 130; *Hoffman v. Harrington,* 22 Mich. 52; *Dustin v. Cowdry,* 23 Vt. 631; *Farrell v. Warren,* 51 Ill. 467; *Larkin v. Avery,* 23 Conn. 304; *Mason v. Hawes,* 52 Conn. 12; *Commonwealth v. Donahue,* 2 L. R. A. 625; *Mosseller v. Deaver,* 8 L. R. A. 537. The 10 to 20 negroes, the drove of harnessed mules, and the five or six scrapers that so crowded the premises that there was not room in the little yard for them to turn around; and the axemen and sappers, noisily hammering away at the yard fence, upheaving the posts, and tumbling them down the cut, constituted force and violence of the rankest order, and required the imposition of punitive damages, even though the outcome did not occasion a visit from an undertaker or surgeon.— *State v. Polock,* 42 Am. Dec. 141, 26 N. C. 305; *State v. Davis,* 19 L. R. A. 206; *State v. Armfield,* 27 N. C. 207; *State v. Barefoot,* 89 N. Car. 565; *Steinlein v. Halstead,* 42 Wis. 422; *Allen v. Tobias,* 77 Ill. 169; *Denver, etc., R. Co. v. Harrish,* 122 U. S. 608; 30 L. Ed. 1148; *Rawson v. Putnam,* 128 Mass. 522; *Mosseller v. Deaver,* 106 N. Car. 494. While title in this case is entirely immaterial, the twenty years of occupancy up to the fence, upon the supposition that it was the true line, even though that supposition may have been erroneous, constituted adverse possession up to that fence, and gave title.—*Hoffman v. White,* 90 Ala. 354; *Johnson v. Thomas,* 23 App. Cas. (D. C.) 150; *Alexander v. Wheeler,* 69 Ala. 332; *Northern Pacific Ry. Co. v. Ely,* 87 Am. St. Rep. 774; *Matthews v. Lake Shore, etc., R. Co.,* 64 Am. St. Rep. 336; *Maysville, etc., R. Co. v. Holton,* 39 S. W. 27. The occupancy of this alleged railroad land for yards, houses and flower gardens and fences, was

alien to the original railroad use; hostile to the purpose of the company, and incompatible with the performance of any of its functions, and was therefore inherently, *ipso facto,* adverse:—*N. W. P. Co. v. Ely,* 87 Am. St. Rep. 734; *Matthews v. Lake Shore, etc., R. Co.,* 64 Am. St. Rep. 336; *Maysville, etc., R. Co. v. Holton,* 39 S. W. 27.

MAYFIELD, J.—This was an action of trespass quare clausum fregit. The alleged trespass was that the defendant, appellant here, had cut down an embankment on the plaintiffs' land to enlarge or improve its right of way. The defense was, practically speaking, that the embankment cut down was the property of the defendant and constituted a part of its right of way, and that it was in the possession thereof, as a part of its right of way, at the time of and before the commission of the alleged trespass. So the real dispute was as to who was in the possession of the land on which the alleged trespass was committed.

There was no error in sustaining the demurrer to the plea in abatement of a former suit pending. The plea, at best, alleged the pendency of a suit in equity. This, as a rule, is not a good plea in abatement of an action in a court of law. The remedy in such cases is to apply to the court of equity to require the plaintiff to elect as to which action or suit he will first prosecute to judgment. It was at an early date said by the Supreme Court of Massachusetts (*Colt v. Partridge,* 7 Metc. [Mass.] 570-576): "The pendency of a bill in equity has not usually been considered as a sufficient ground for sustaining a plea in abatement to an action at law. When both suits are commenced by the same party, it may furnish a proper occasion for a motion to require the party to elect which action he will first proceed in,"

etc.  This case was followed by this court in *Humphries v. Dawson,* 38 Ala. 204, where it is said:  "It appears, also, that the pendency of a bill in equity has not usually been considered sufficient ground for a plea in abatement of a suit at law.—*Colt v. Partridge,* 7 Metc. (Mass.) 570, 576; *Blanchard v. Stone,* 16 Vt. 234; *Hatch v. Spofford,* 22 Conn. 495-596 [58 Am. Dec. 433]; Story's Conflict of Laws, § 610a (Bennett's Edition)."

The plea of misnomer, as to the name of the defendant corporation, "Southern Railway Company," and "the Southern Railway Company," is both too frivolous and too technical to be noticed.

There was no error in the trial court's declining to strike from the complaint certain allegations as to certain acts of trespass or wrongs mentioned therein.  If proven, they were circumstances for the consideration of the jury in determining punitive damages, if such could be shown.  The rule of law as to the measure of actual damages in such cases did not render such averments improper on the question of punitive damages.

The first and second counts of the complaint practically followed the forms prescribed in the Code for such actions and were sufficient.—Section 5382, form 26, pp. 1199-1200, vol. 2, of the Code of 1907.

There was no error in sustaining demurrers to pleas 2 and 4.  If there could be said to be any merit in either, the same matter was availing under the general issue, and, if error, it affirmatively appears that it was without injury.  But we do not mean to say that there was error therein.

Plea 5 was clearly bad, if not frivolous.  It was no defense to this action that one of the plaintiffs' was a married woman and lived with her husband and children on the land at the time of the alleged trespass.

There was no error in allowing Fannie Hayes, one of the plaintiffs in this case, to testify as to the conversation had between her and the defendant's agents who are alleged to have authorized the commission of the trespass. This conversation occurred at the time of the trespass and was, in parts, plaintiff's protest against the act complained of and the defendant's or its agents' insistence that the defendant had the right to do the act complained of.

Much of the evidence objected to by the defendant was a part of the res gestæ; and the other, if not, was admissible because between the parties or their authorized agents and about the subject-matter in dispute; and much of it was admissible for the jury to consider in determining the character and intent of the alleged trespass, and therefore bore upon the question of punitive damages. This was true although it was not admissible to show the extent or the amount of the actual damages.

The trial court did, however, err in excluding portions of the defendant's answers to the interrogatories propounded to it by the plaintiff because not responsive to the interrogatories. If this had been an ordinary deposition of a witness, the rule would be different, but we do not mean to indicate what our ruling would be, if such were the case presented. Interrogatories to the parties, and their answers, under this provision of the Code, as has been frequently held, are in the nature of bills of discovery in equity. The proceeding is frequently spoken of and referred to as a statutory bill of discovery. The answers to the interrogatories, in such cases, are treated as pleadings as well as evidence. The party propounding the interrogatories may insist upon and compel full and complete answers or have the statutory penalties enforced against his adversary for fail-

[Southern Railway Co. v. Hayes, et al.]

ure to answer. When the answer is thus obtained, the party demanding it may offer it in evidence or not, as he sees fit. The party answering cannot offer his own answer in evidence. If the party demanding the answer introduce it in evidence, he must introduce it as a whole; he cannot introduce a part only, or, having introduced the whole, have parts of the answer stricken because not responsive or because they are self-serving. This court, at an early date, held that: "The plaintiff, after obtaining the discovery, is not bound to read the answer, but it is optionary with him to read it or not. Unless he choose to read it, the other party cannot, so that in all cases he has the privilege of experimenting upon the chances of benefit which a discovery may afford. If he offers a portion of it, he makes the whole evidence and submits for the jury to determine what weight they will give it. Some confusion has been introduced into decisions by not observing the distinction between an answer as evidence in the cause in equity in which it is made and when offered in the common-law court. In the first it is only evidence so far as it is responsive; but in the latter, the whole being evidence, it is for the jury to give to each portion whatever of weight they may think it deserves."—*Saltmarsh v. Bower,* 22 Ala. 221, 230. This case overruled the case of *Lake v. Gilchrist,* 7 Ala. 955.

In the case of *Sullivan Timber Co. v. Louisville & Nashville Railroad Co.,* 163 Ala. 125, 50 South. 941, the cases were reviewed, and it was there said, referring to *Saltmarsh v. Bower,* 22 Ala. 221: "This state of the law, in this regard, remained without reflection upon its correctness until the decision in *Bank v. Leland,* 122 Ala. 289, 294, 25 South. 195, when for the first time. so far as we are advised, it was said in effect that answers merely irresponsive might be stricken."

*Garrison v. Glass,* 139 Ala. 512, 36 South. 725, followed *Leland's Case, supra,* both of these cases were expressly overruled in *Sullivan's Case,* 163 Ala. 125, at pages 136, 137, 50 South. 941, at page 944. The reason for the rule and its enforcement was well stated by McClellan, J., in the last case referred to. It is there said: "If the interrogatee should be confined in his answers to only those interrogatories responsive to the interrogatories propounded to him, the power would be thereby given the interrogator to extract from the interrogatee only matters favorable to his action or defense and leave the interrogatee dumb to explain or avoid in his answers the favorable (to the interrogator) fact or circumstances so elicited. Such a result cannot be sanctioned, especially in view of the fact that answers to pertinent interrogatories, not otherwise improper or exempted from the requirement to be answered, may be compelled under rigorous penalties. The serious consequence indicated is not avoided by the fact that the party interrogated may testify on the trial; and this for the reason, among others, that the interrogatee may die or become otherwise disqualified to testify between the time he is required to and does answer and the time of the trial."

We are also of the opinion that the trial court erred in giving the affirmative charge for the plaintiff. There can be no doubt that the railroad company had acquired the legal title to the land alleged to have been trespassed upon, unless the plaintiff had acquired title thereto by adverse possession. We are now speaking of the legal title, aside from the actual possession of the band of land alleged to have been trespassed upon.

The defendant showed a perfect, proper, title to a right of way of 66-foot width at the point where the land is claimed to have been trespassed upon, and the

land claimed to have been trespassed upon was included within this 66-foot right of way.  If the plaintiff's evidence was to be believed, she may have acquired the legal title to the strip of land in question by adverse possession, but in this manner only.  Her paper title was bounded by the right of way, which right of way included the land or zone in dispute.  It was therefore a question for the jury, under all the evidence, whether or not her possession of this strip was adverse to the defendant or whether or not it was permissive.  The bona fides of her possession and that of those under whom she claims was a question for the jury and not one for the court, under the evidence in this case.

There is little, if any, doubt, we think, after examination of this record, that the plaintiff and those under whom she claims never intended to hold or claim, except to the right of way, and that the strip of land claimed was a part of the right of way; but the boundary line between the right of way and the plaintiff's property was uncertain.  It may be that she and they claimed this strip as their own and were not holding it with the permission or consent of the railroad company.  On the other hand, it may be that this possession of the plaintiff and those under whom she claims was not adverse to the defendant but was in recognition of the defendant's rights.  This was a question for the jury, under all the evidence, and the court erred in taking this question from the jury.

It is true there is some evidence in the record that the defendant went more than 33 feet from the center of the track and therefore off the right of way in plowing up the land; but there was other evidence to the effect that the defendant did not go beyond the right of way.  This was therefore a question for the jury.

When we said above that the lands in question were a part of the right of way, we were speaking generally.

This action is trespass quare clausum fregit and not trespass de bonis asportatis, or vi et armis against the person, nor is it forcible entry. The rule of law insisted on by counsel for appellees that the owner of land cannot take or retake possession of his own land by force applies to any one of the last three actions but not to the first mentioned. It is a perfect defense to an action of trespass quare clausum fregit to show that the defendant owns the land in question, and that he had, at the time in question, the right to enter; and the fact that he entered by force, over the protest of plaintiff, does not destroy his defense. If he uses more force than is necessary and injures the person or the property of the plaintiff, he is liable in an appropriate action; but that action is not quare clausum fregit. This action is to recover damages as for injury to the land, and if the plaintiff did not own the land, and his possession was wrongful, he could not suffer any damages, so far as the land was concerned, whatever damages he may have otherwise suffered in person or estate.

It is very true, as contended by counsel for appellees, that a man cannot take the law in his own hands and right wrongs against him or his property by force, and that if he do so he is liable for the consequences of his wrongful and forceful acts; yet he must be brought to account in an appropriate action which the law has provided.

It has ever been the law in this state that title to the particular land and immediate right to the possession was a complete defense to an action of trespass quare clausum fregit. It has likewise ever been the law in this state that, if the owner, in taking possession of his property, used more force than was necessary to regain

the possession of his own, he was liable in damages for all injuries inflicted in consequence thereof and might also be liable criminally, and that in an appropriate action it is no defense that he was retaking possession of his own property. It is no defense to an action of forcible entry and detainer that the defendant owned the land and had the immediate right to possession; but this is a complete defense to an action of trespass quare clausum fregit. This has ever been the law in this state, certainly from 1833, the date of *Duncan v. Potts,* 5 Stew. & P. 82, 24 Am. Dec. 766, down to 1901, the date of *Louisville & Nashville Railroad Co. v. Hall,* 131 Ala. 161, 32 South. 603. In the latter case it is said: "As against a stranger, actual possession will support the action, without regard to whether plaintiff had title at the time of the alleged trespass.—*Duncan v. Potts,* 5 Stew & P. 82 [24 Am. Dec. 766]; *Lankford v. Green,* 62 Ala. 314. But, as against one having title to the property alleged to have been trespassed upon and having been wrongfully denied possession, in 26 Am. & Eng. Ency. Law (1st Ed.) 600, it is said: 'One having title to property and wrongfully denied possession can enter without being guilty of trespass; so a tenant, mortgagor, or other person, without title, may have a present right of possession which will justify his entry or enable him, if in possession, to maintain trespass for the wrongful entry of another.' See, in support of this proposition, note 1 on page 600 and note 1 on page 601 of the same volume where the cases are collated. This principle was recognized in *Herndon v. Bartlett,* 4 Port. 481, where the court held that the plea of liberum tenementum was an answer to a complaint in trespass quare clausum fregit alleging entry with force and arms and was proper matter for

special plea. See, also, 26 Am. & Eng. Ency. Law (1st Ed) 632-634."

As against a mere trespasser the plaintiff may recover in an action of quare clausum fregit by showing possession only; but as against the true owner, having immediate right to possession, of course, he could not. This is made clear by all the authorities. "Possession, whether founded on a good or bad title, will support the action against a stranger or wrongdoer. Or the possession may be tortious, and a wrongdoer cannot justify or excuse an invasion of and injury to it.—*Duncan v. Potts,* 5 Stew. & P. 82 [24 Am. Dec. 766]; 2 Green. Ev. § 618. The title may be, and often is, drawn in question; the gist of the action is nevertheless the injury to the plaintiff's possession."—*Lankford v. Green,* 62 Ala. 314, 318.

The case of *Morris v. Robinson,* 80 Ala. 291, does not, in our opinion, decide to the contrary of what we now decide. There is a dictum in that opinion, quoted by appellee, which might be construed otherwise; but certainly nothing was decided in that case contrary to what is decided in this case. A judgment for the plaintiff in that case was reversed on account of an erroneous ruling as to evidence. If the affirmative charge could and should have been given in that case, without regard to the objectionable evidence, the judgment would not have been reversed. Aside from the title, the plaintiff had shown as strong a case as the plaintiff has shown in this case. In that case "the plaintiff showed that he had been in possession of the land upon which the alleged trespass was committed for 25 years; that in March, 1884, the defendant, Morris, with two or three other men, came on the land, which was near plaintiff's house, and informed plaintiff that he (Morris) had come to move the fence; that plaintiff notified

Morris that if he moved the fence he would prosecute
him; that Morris and those with him did move the
fence about 20 yards, which cut the plaintiff off from
his (corn) crib, stable, shop, and spring, besides turn-
ing out some of plaintiff's fruit trees, which latter were
injured by stock. Plaintiff testified that he recovered
the land in a few days in an unlawful detainer suit be-
fore a justice of the peace." The learned chief justice
who wrote that opinion clearly recognized the rule we
have stated in this case that title and right to posses-
sion are sometimes material issues in actions of tres-
pass quare clausum fregit. On this subject he spoke as
follows: "In trespass quare clausum fregit, title is not
necessarily in issue, although there are many cases in
which it does become material. Possession is the great
underlying fact which supports the action, but title is
sometimes material in defining the extent of the pos-
session. There are other points of view in which title
sometimes becomes a material inquiry.—6 Wait, Ac. &
Def. 64, 65. And it may become material in mitigation
of damages. One having title, or honestly believing
he has title to lands, who takes possession peaceably,
in the honest belief he may do so, would receive less
condemnation by a jury than if he were a willful tres-
passer, asserting no claim of right."—80 Ala. 294.

The rule which we have declared in this case, and
which was declared in the other decisions of this court
cited above, is stated in Cyc. (volume 38, pp. 1047-1049)
as follows: "Where the owner of land with right to im-
mediate possession uses force in the exercise of his right
to enter or retake possession, the question of his liabil-
ity has been variously determined. The better opinion
seems to be that title and right of possession is a good
defense to a forcible entry by the owner of land on one
holding possession, and forcible expulsion of such oc-

cupant or forcible removal of part of the realty. At any rate, the weight of authority is strongly against ever allowing an action of trespass to land against the owner of realty with immediate right to possession, and the rule has not been changed by statutes making forcible entry a crime or ground for civil action for restoration of possession; and the better opinion seems to be that in the absence of statute no civil action for damages lies against him in any form if no more force was used than was necessary, but that, if the personalty or the person of the occupant is injured by excessive force or by carelessness, the owner of the land is liable therefor."

In a Massachusetts case (*Sampson v. Henry*, 13 Pick. [Mass.] 36) the owner, a landlord, one or two days after the lease had expired, while the tenant's wife was in travail, entered the land over the protest of the tenant and broke open the house in which the tenant was living; the tenant claiming that the lease had not expired. The tenant sued the landlord in trespass quare clausum fregit, and the court held that there could be no recovery in that action, though there might be a recovery as for other wrongs, offenses, and injuries.

The theory is that this action is solely to recover damages as for injuries to the land or to the possession thereof; and, if the plaintiff did not own the land and had no right to the possession as against the defendant, then of course the former could suffer no damages as to the land or the possession; whatever damages he may have suffered in other respects, and as to other property or to person.

In the case of *Low v. Elwell*, 121 Mass. 309, 23 Am. Rep. 272, this earlier case was reviewed, and the court through Gray, C. J., speaking of the case of *Sampson*

*v. Henry,* 13 Pick. (Mass.) 36, said: "In the latter case, which was an action for breaking and entering the plaintiff's close, and for an assault and battery upon him, the court held that the plea of liberum tenementum was a good justification of the charge of breaking and entering the house but not for the personal assault and battery. That decision, so far as it held that the landlord was not liable to an action of trespass quare clausum fregit by a tenant at sufferance for a forcible entry, has been repeatedly affirmed.—*Meader v. Stone,* 7 Metc. [Mass.] 147 *Miner v. Stevens,* 1 Cush. [Mass.] 482, 485; *Mason v. Holt,* v *Allen* [Mass.] 45 *Curtis v. Galvin,* 1 Allen [Mass.] 215; *Moore v. Mason,* 1 Allen [Mass.] 406. And, so far as it allowed the plaintiff to recover, in such an action, damages for the incidental injury to him or to his personal property, it has been overruled. —*Eames v. Prentice,* 8 Cush. [Mass.] 337."

The other assignments of error have been examined and those insisted upon carefully; and we find no error except as to the matters pointed out. Of course the two questions as to which we reverse entered into some of the other assignments (that is, the evidence excluded, which we hold to have been erroneously excluded, ought to have been admitted) ; and the right to recover any damages ought to have been left to the jury.

For these errors, the judgment must be reversed, and the cause remanded for another trial.

Reversed and remanded. All the Justices concur, except DOWDELL, C. J., not sitting.