This is an appeal from a final judgment in favor of defendants, Ovid E. Sanders and Arva Nell Sanders, and against plaintiff, Willie Cauley. The judgment determined that neither plaintiff nor defendants were entitled to recover damages from the other for trespass; it set a boundary line between the lands of the plaintiff and defendants and held the defendants were the owners of certain disputed real property. We reverse and remand.
The center of this controversy is a small strip of land, approximately one acre, located in Covington County. The plaintiff and defendants both claim to own it.
The plaintiff Cauley initiated this action by filing a two-count complaint. Count one alleges that defendants had trespassed, and threatened to continue to do so, on land owned and possessed by plaintiff. In the complaint the land is described as follows:
 "A lot or parcel of land described as follows: Commencing at the intersection of the North line of the NW 1/4 of NW 1/4 of Section 4, Township 5, Range 18 with the West side of U.S. Highway 331 and run thence South along the West side of said Highway for a distance of 1,281.6 feet to the point of beginning of the lot herein described, said point being 125.3 feet South of U.S. Highway marker P.C. Station 11 plus 89.2 and thence continuing South along the West line of said highway 203.2 feet; thence running South 88° 30' West for a distance of 280 feet; thence run North 64° 15' West for a distance of 198 feet; thence run North 9° 30' East for a distance of 324 feet; thence run South 52° 0' East for a distance of 191 feet; thence run South 75° 0' East for a distance of 305.5 feet to the point of beginning, said lot lying in the NW 1/4 of Section 4, Township 5, Range 18." *Page 893 
Attached to this opinion as an appendix is a sketch of the real property involved in this litigation. The property above described includes both parcel "A" and "B" shown on the sketch. It is bounded on the North and West by a fence; a field road is its southern boundary and U.S. Highway No. 331 is its eastern boundary. It consists of approximately 3.76 acres. Count two alleges that plaintiff owns the property and requests the court to quiet title in the land against any claim of defendants.
The case was tried ore tenus. The evidence discloses that both the land owned by defendants, the Sanderses, and that owned by plaintiff Cauley was at one time the property of one Jim Olmstead. In December 1963, Jim Olmstead and wife conveyed parcel "B" to their son James Kenneth Olmstead. In that conveyance the property was described as:
 "* * * One acre in the SW-1/4 of NW-1/4[1] of Section 4, Township 5, Range 18, described as follows: Beginning at a point on the West Section Line 145 yards North of the Southwest corner of said forty; run thence South to the said Southwest corner; thence East 35 yards; thence North 135 yards; thence Northwest to point of beginning, less that portion South of a field road." (Emphasis added.)
The evidence also discloses that Jim Olmstead had at one time owned parcel "A," now occupied by Cauley. It is described as:
 "* * * Commencing at the intersection of the North line of the NW 1/4 of NW 1/4 of Section 4, Township 5, Range 18, with the west side of U.S. Highway 331, and run thence South along the West side of said highway for a distance of 1281.6 feet to the point of beginning of the lot hereby described and conveyed, said point being 125.3 feet South of U.S. Highway Marker PC Station 11 + 89.2, and thence continuing South along the West line of said highway 203.2 feet to the South boundary line of said forty; thence running North 89 degrees and no minutes West 320 feet; thence running North 294.4 feet; thence running South 74 degrees and 22 minutes East 377.3 feet to the point of beginning, said lot lying in and being a part of the NW 1/4 of NW 1/4 of Section 4 Township 5, Range 18, containing 2 acres, more or less."
Jim Olmstead mortgaged this land to the Veterans Administration, which foreclosed after Jim defaulted. It was eventually purchased by W.B. Spear and wife. In August 1966, Mr. and Mrs. Spear in turn sold this property to Cauley under a contract of sale; it described only two acres as shown. This two acre tract is located, along with other land, within an old fenced area which contains almost two acres more land than that purchased by Cauley. One of these additional acres was the strip, parcel "B," that had been conveyed to James Kenneth Olmstead. Cauley moved onto the land described in the contract of sale in August 1966.
In April 1978, James Kenneth Olmstead conveyed parcel "B" to the Sanderses. At the time he was not in actual possession.
The evidence tends to show that Cauley had occupied and used all the land located within the fence, approximately 3.76 acres, for a number of years; however, the evidence was in conflict as to the exact number of years he had actually used the land owned by James Kenneth Olmstead that was subsequently conveyed to the Sanderses. Cauley, and witnesses in his behalf, testified plaintiff had used the land for ten years or more, while the Sanderses, and witnesses in their behalf, testified plaintiff had used the land for less than ten years.
The evidence further discloses that the events immediately precipitating the filing of this action occurred on or about 17 May 1978. On that date, in spite of warning by Cauley not to do so, Ovid E. Sanders, and his two daughters, who are not named in this action, crossed over a fence onto the one-acre of land, parcel "B," deeded to the Sanderses by James Kenneth Olmstead. *Page 894 
Sanders and his daughters entered the land in dispute and measured the boundaries as described in the deed from James Kenneth Olmstead. During this incident one of the daughters came in contact with, and cut, an electric fence which had been erected by plaintiff. At the time, Cauley kept horses confined within a fence surrounding the entire 3.76 acre tract: parcels "A" and "B," plus a very small strip of land between the two parcels. The evidence in this case includes testimony of a surveyor which shows that the 3.76 acre tract contains more land than is described either in the deed to the Sanderses of parcel "B" or that which is described in the contract of sale by which Cauley acquired parcel "A." In the appendix we show it as "uncertain."
After the ore tenus hearing, the following decree was entered:
 "This cause coming on for hearing before the Court and each of the parties being present and represented by counsel, the Court proceeds to hear the evidence orally.
 "The Court finds from the evidence that neither party is entitled to recover damages from the other for trespass. The Court finds that the Plaintiff is the owner of the following described tract of land:
 "`Commencing at the intersection of the North line of the NW 1/4 of Section 4, Township 5, Range 18, with the west side of U.S. Highway 331, and run thence South along the West side of said highway for a distance of 1281.6 feet to the point of beginning of the lot hereby described and conveyed, said point being 125.3 feet South of U.S. Highway Marker PC Station 11 + 89.2, and thence continuing South along the West line of said highway 203.2 feet to the South boundary line of said forty; thence running North 89 degrees and no minutes West 320 feet; thence running
 North 294.4 feet; thence running South 74 degrees and 22 minutes east 377.3 feet to the point of beginning, said lot lying in and being a part of the NW 1/4 of the NW 1/4 of Section 4, Township 5, Range 18, containing 2 acres, more or less.'
 And that the Defendants are the owners of all other lands described in the Plaintiff's complaint. And that the true boundary is that portion of the description hereinabove set forth which adjoins the lands of the Defendants.
 "It is suggested that the parties employ a surveyor to stake said boundary lines.
 "It is further ORDERED AND ADJUDGED by the Court that the Defendants' title to the lands which the Court has found them to be the owner of is quieted in the Defendants.
 "It is further ORDERED AND ADJUDGED by the Court that the costs of this proceeding be and they are hereby taxed against the Plaintiff, for which let execution issue.
"Done and Ordered this the 31st day of May, 1979."
Thus, it can be seen that the trial court determined Cauley to be the owner of parcel "A" and the Sanderses to be the owners of parcel "B" and that designated as "uncertain."
The following three questions are presented:
(1) Was the trial court correct in implicitly finding that Cauley had not acquired title to parcel "B" by adverse possession?
(2) Was the trial court correct in finding Ovid Sanders not liable to plaintiff for a trespass?
(3) Did the trial court commit reversible error by finding that the Sanderses owned all the land described in Cauley's complaint except for parcel "A" and then quieting title in the Sanderses to that land?
We answer one and two in the affirmative, but, because we also answer three in the affirmative, we are compelled to reverse and remand.
Cauley contends the trial court erred to reversal by finding he did not own all the *Page 895 
land described in his complaint, including parcel "B." He argues that he proved adverse possession of that parcel for more than ten years, therefore acquired title, and the trial court erred in concluding to the contrary. We disagree.
As mentioned, the evidence is disputed as to just how long plaintiff had actually been using the land in question. There was substantial evidence presented that Cauley's use of parcel "B" was for a period of from five to eight years. Furthermore, the evidence indicates: (1) Cauley and the Sanderses are not actually coterminous owners; (2) Cauley had no color of title to parcel "B"; and (3) Cauley had not paid any taxes on the disputed land. Be reminded, the evidence was adduced ore tenus, and the findings and conclusions of the trial court thereon are given the same weight as a jury verdict; they will not be disturbed unless palpably wrong. Martin v. Howard, 293 Ala. 36,299 So.2d 727 (1974). We hold the trial court's finding that Cauley did not own parcel "B" is supported by credible evidence and it did not err in so finding.
Cauley contends the trial court committed reversible error by finding defendant Ovid Sanders did not commit a trespass on 17 May 1978. He concedes the evidence shows Arva Nell Sanders was not guilty of trespass. He does contend, however, that the evidence is undisputed that Ovid Sanders came onto parcel "B" after being warned not to and while he, the plaintiff, was in possession. Cauley argues that this unquestionably proves Ovid Sanders was guilty of trespass since trespass is interference with possession. We find the trial court did not err in finding that Sanders did not commit a trespass.
We agree with the plaintiff that it is a general rule of law that trespass is a remedy for interference with a possessory right. Vasko v. Jardine, 346 So.2d 962 (Ala. 1977). The question of title, however, may be put in issue in a trespass action. Lacey v. Morris, 215 Ala. 302, 110 So. 379 (1926). It has long been a rule of law in Alabama that title to the particular land alleged to be the subject of a trespass, together with an immediate right to the possession of that land, is a complete defense to an action of trespass quareclausum fregit. Southern Railway Co. v. Hayes, 183 Ala. 465,62 So. 874 (1913); Lacey v. Morris, supra; Landrum v. Davidson,252 Ala. 125, 39 So.2d 662 (1949); Womble v. Glenn, 256 Ala. 374, 54 So.2d 715 (1951); Southern Railway Co. v. Sanford,262 Ala. 5, 76 So.2d 164 (1954); Gulf Oil Corporation v. Deese,275 Ala. 178, 153 So.2d 614 (1963).
The reasoning behind the above mentioned defense to an action for trespass quare clausum fregit is astutely explained by Justice Mayfield in Southern Railway Co. v. Hayes, supra:
"This action is trespass quare clausum fregit and not trespass de bonis asportatis, or vi et armis against the person, nor is it forcible entry. The rule of law insisted on by counsel for appellees that the owner of land cannot take or retake possession of his own land by force applies to any one of the last three actions but not to the first mentioned. It is a perfect defense to an action of trespass quare clausum fregit to show that the defendant owns the land in question, and that he had, at the time in question, the right to enter; and the fact that he entered by force, over the protest of plaintiff, does not destroy his defense. If he uses more force than is necessary and injures the person or the property of the plaintiff, he is liable in an appropriate action; but that action is not quare clausum fregit. This action is to recover damages as for injury to the land, and if the plaintiff did not own the land, and his possession was wrongful, he could not suffer any damages, so far as the land was concerned, whatever damages he may have otherwise suffered in person or estate.
"It is very true, as contended by counsel for appellees, that a man cannot take the law in his own hands and right wrongs *Page 896 
against him or his property by force, and that if he do so he is liable for the consequences of his wrongful and forceful acts; yet he must be brought to account in an appropriate action which the law has provided.
"It has ever been the law in this state that title to the particular land and immediate right to the possession was a complete defense to an action of trespass quare clausum fregit. It has likewise ever been the law in this state that, if the owner, in taking possession of his property, used more force than was necessary to regain the possession of his own, he was liable in damages for all injuries inflicted in consequence thereof and might also be liable criminally, and that in an appropriate action it is no defense that he was retaking possession of his own property. It is no defense to an action of forcible entry and detainer that the defendant owned the land and had the immediate right to possession; but this is a complete defense to an action of trespass quare clausum fregit. This has ever been the law in this state, certainly from 1833, the date of Duncan v. Potts, 5 Stew. P. 82, 24 Am.Dec. 766, down to 1901, the date of Louisville Nashville Railroad Co.v. Hall, 131 Ala. 161, 32 So. 603. In the latter case it is said: `As against a stranger, actual possession will support the action, without regard to whether plaintiff had title at the time of the alleged trespass. Duncan v. Potts, 5 Stew. P. 82 [24 Am.Dec. 766]; Lankford v. Green, 62 Ala. 314. But, as against one having title to the property alleged to have been trespassed upon and having been wrongfully denied possession, in 26 Am. Eng. Ency. Law (1st Ed.) 600, it is said: "One having title to property and wrongfully denied possession can enter without being guilty of trespass; so a tenant, mortgagor, or other person, without title, may have a present right of possession which will justify his entry or enable him, if in possession, to maintain trespass for the wrongful entry of another." See, in support of this proposition, note 1 on page 600 and note 1 on page 601 of the same volume where the cases are collated. This principle was recognized in Herndon v.Bartlett, 4 Port. 481, where the court held that the plea of liberum tenementum was an answer to a complaint in trespass quare clausum fregit alleging entry with force and arms and was proper matter for special plea. See, also, 26 Am. Eng. Ency. Law (1st Ed.) 632-634.'
"As against a mere trespasser the plaintiff may recover in an action of quare clausum fregit by showing possession only, but as against the true owner, having immediate right to possession, of course, he could not. This is made clear by all the authorities. `Possession, whether founded on a good or bad title, will support the action against a stranger or wrongdoer. Or the possession may be tortious, and a wrongdoer cannot justify or excuse an invasion of and injury to it. Duncan v.Potts, 5 Stew. P. 82 [24 Am.Dec. 766]; 2 Green. Ev. § 618. The title may be, and often is, drawn in question; the gist of the action is nevertheless the injury to the plaintiff's possession.' Lankford v. Green, 62 Ala. 314, 318.
"The case of Morris v. Robinson, 80 Ala. 291, does not, in our opinion, decide to the contrary of what we now decide. There is a dictum in that opinion, quoted by appellee, which might be construed otherwise; but certainly nothing was decided in that case contrary to what is decided in this case. A judgment for the plaintiff in that case was reversed on account of an erroneous ruling as to evidence. If the affirmative charge could and should have been given in that case, without regard to the objectionable evidence, the judgment would not have been reversed. Aside from the title, the plaintiff had shown as strong a case as the plaintiff has shown in this case. In that case `the plaintiff showed that he had been in possession of the land upon which the alleged trespass was committed for 25 years; that in March, 1884, the defendant, Morris, with two or three other men, came on the land, which was near plaintiff's *Page 897 
house, and informed plaintiff that he (Morris) had come to move the fence; that plaintiff notified Morris that if he moved the fence he would prosecute him; that Morris and those with him did move the fence about 20 yards, which cut the plaintiff off from his (corn) crib, stable, shop, and spring, besides turning out some of plaintiff's fruit trees, which latter were injured by stock. Plaintiff testified that he recovered the land in a few days in an unlawful detainer suit before a justice of the peace.' The learned chief justice who wrote that opinion clearly recognized the rule we have stated in this case that title and right to possession are sometimes material issues in actions of trespass quare clausum fregit. On this subject he spoke as follows: `In trespass quare clausum fregit, title is not necessarily in issue, although there are many cases in which it does become material. Possession is the great underlying fact which supports the action, but title is sometimes material in defining the extent of the possession. There are other points of view in which title sometimes becomes a material inquiry. 6 Wait, Ac. Def. 64, 65. And it may become material in mitigation of damages. One having title, or honestly believing he has title to lands, who takes possession peaceably, in the honest belief he may do so, would receive less condemnation by a jury than if he were a willful trespasser, asserting no claim of right.' 80 Ala. 294.
"The rule which we have declared in this case, and which was declared in the other decisions of this court cited above, is stated in Cyc. (volume 38, pp. 1047-1049) as follows: `Where the owner of land with right to immediate possession uses force in the exercise of his right to enter or retake possession, the question of his liability has been variously determined. The better opinion seems to be that title and right of possession is a good defense to a forcible entry by the owner of land on one holding possession, and forcible expulsion of such occupant or forcible removal of part of the realty. At any rate, the weight of authority is strongly against ever allowing an action of trespass to land against the owner of realty with immediate right to possession, and the rule has not been changed by statutes making forcible entry a crime or ground for civil action for restoration of possession; and the better opinion seems to be that in the absence of statute no civil action for damages lies against him in any form if no more force was used than was necessary, but that, if the personalty or the person of the occupant is injured by excessive force or by carelessness, the owner of the land is liable therefor.'
"In a Massachusetts case (Sampson v. Henry, 13 Pick. [Mass.] 36) the owner, a landlord, one or two days after the lease had expired, while the tenant's wife was in travail, entered the land over the protest of the tenant and broke open the house in which the tenant was living; the tenant claiming that the lease had not expired. The tenant sued the landlord in trespass quare clausum fregit, and the court held that there could be no recovery in that action, though there might be a recovery as for other wrongs, offenses, and injuries.
"The theory is that this action is solely to recover damages as for injuries to the land or to the possession thereof; and, if the plaintiff did not own the land and had no right to the possession as against the defendant, then of course the former could suffer no damages as to the land or the possession; whatever damages he may have suffered in other respects, and as to other property or to person.
"In the case of Low v. Elwell, 121 Mass. 309, 23 Am.Rep. 272, this earlier case was reviewed, and the court through Gray, C.J., speaking of the case of Sampson v. Henry, 13 Pick. (Mass.) 36, said: `In the latter case, which was an action for breaking and entering the plaintiff's close, and for an assault and battery upon him, the court held that the plea of liberum tenementum was a good justification of the charge of breaking and entering the house but not for the personal assault and battery. That decision, so far as it held that the landlord was *Page 898 
not liable to an action of trespass quare clausum fregit by a tenant at sufferance for a forcible entry, has been repeatedly affirmed. Meador v. Stone, 7 Metc. [Mass.] 147; Miner v.Stevens, 1 Cush. [Mass.] 482, 485; Mason v. Holt, V Allen [Mass.] 45; Curtis v. Galvin, 1 Allen [Mass.] 215; Moore v.Mason, 1 Allen [Mass.] 406. And so far as it allowed the plaintiff to recover, in such an action, damages for the incidental injury to him or to his personal property, it has been overruled. Eames v. Prentice, 8 Cush. [Mass.] 337.'"183 Ala. at 476-481, 62 So. 877.
Count one of Cauley's complaint clearly alleges trespassquare clausum fregit. The trial court found, and the evidence supports that finding, the Sanderses to be the owners of parcel "B". Furthermore, there was no evidence that Ovid Sanders used excessive force to enter onto the land. Therefore, because the Sanderses had purchased the land, and Cauley had no legal right to ownership or possession of it, the Sanderses had a perfect defense to the trespass action and the trial court correctly so ruled. Such a defense is not, however, available as to the parcel designated "uncertain," unless title could be established in the Sanderses. We cannot conclude, contrary to the findings of the trial court, that the Sanderses trespassed on the parcel designated as "uncertain."
Cauley also contends the trial court erred by finding the Sanderses to be the owners of all the land described in his complaint except for parcel "A," the land described in his contract of sale. We agree that this particular finding is not supported by the evidence and therefore, reverse and remand.
The Sanderses only claimed to own parcel "B," described in their deed from James Kenneth Olmstead. Indeed, the evidence only shows that the Sanderses own the property described in that deed. Cauley's complaint contains a description of land neither described in the Sanderses' deed nor in Cauley's contract of sale: "uncertain," as shown by the appendix. Ownership of this "no-man's" land was not litigated below. We assume, but do not, and cannot decide, that ownership of this "no-man's" land still rests with its original owner, Jim Olmstead; however, this question will have to be resolved in a different action. In any event, the trial court erred to reversal by quieting title to it in the Sanderses. On remand the judgment should be corrected accordingly.
For the reasons assigned, the judgment is hereby reversed and the case remanded for entry of judgment not inconsistent with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.
TORBERT, C.J., and FAULKNER, ALMON and SHORES, JJ., concur.
[1] There appears to be a discrepancy between the defendants' deed describing their property as being the "SW 1/4 of NW 1/4" and the balance of the record indicating the land is in the NW-1/4 of NW-1/4 but apparently no issue was made of this. *Page 899 
 APPENDIX
[EDITORS' NOTE: SKETCH IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 900