# Williams *v.* Gibson.

## *Statutory Action of Ejectment.*

1. *Mines and mining; grant of mineral rights; right of grantee to open mines and occupy surface.*—An express grant of all the minerals and mineral rights in a tract of land is by necessary implication the grant also of the right to open and work the mines, and to occupy for this purpose as much of the surface as may be reasonably necessary, and this right is not limited by a special grant of certain timber and water privileges and a right of way, such specifications tending rather to strengthen the implication of the right to occupy the surface.

2. *Same; occupation of surface by grantee of mineral rights; improvements necessary to work mines.*—What improvements are reasonably necessary for the profitable and beneficial working of a mine, and to what extent the surface may be reasonably occupied for this purpose, are questions of fact for the jury.

3. *Same; occupation of surface by grantee of mineral rights; ejectment; evidence.*—In ejectment for the surface of a tract of land out of which minerals had been granted, evidence as to how much of the surface was or might be needed for the erection of coke ovens is properly excluded, the grant conveying no right to use the land for that purpose.

4. *Same; ejectment for surface of mineral land; evidence; mining customs.*—In ejectment for the surface of land used in working a mine it is

[Williams v. Gibson.]

incompetent, for the purpose of proving the extent of land necessarily occupied, to show that particular individuals in the neighborhood carried on a mine without a store-house for supplies, where the business of mining in the vicinity is of too recent date to establish a custom.

5. *Same; ejectment for surface of mineral lands; evidence; supply stores.*—In ejectment for the surface of land used in working a mine, where it appeared that defendant had established a supply store, it is not error, for the purpose of testing the necessity of occupying the land for such purpose, to show that two other stores were located near the mine.

6. *Same; ejectment for surface of mineral lands; evidence; improvements.*—In ejectment for the surface of land used in working a mine, evidence of the value of improvements made by defendant on the land in controversy is relevant as affecting its rental value.

7. *Frauds, statute of; contract for purchase of land; when within statute.*—A verbal contract for the purchase of land, having never been reduced to writing, nor accompanied by payment of any part of the purchase price, is within the statute of frauds, and confers no rights which would prejudice the parties to an ejectment suit for the land.

APPEAL from Walker Circuit Court.

Tried before the Hon. S. H. SPROTT.

This was an action in the nature of ejectment under the statute, brought by appellee, Gibson, for the "*surface*" of certain lands out of which the "*minerals*," &c., had been previously granted, described in the complaint as follows, viz :

"The northeast quarter of southwest quarter, and all of that part of the southeast quarter of southwest quarter, situate or lying north of the Georgia Pacific Railway, section 28, township 15, range 9 west, situate in said county of Walker, State of Alabama, except all the coal and other minerals in, under and upon said land, and also, except all timber and water upon the same, necessary for the development, working and mining of said coal and other minerals, and the preparation of the same for market, and the removal of the same, also the right-of-way and the right to build roads of any description over the same, necessary for the convenient transportation of said coal and other minerals, from said land, and the conveying and transporting to and from said land all material and implements that may be of use in the mining and removal of said coal and other minerals, or in the preparation of the same for market."

The plaintiff deraigns title to the "*surface*," as above described, from Green B. Frost; and likewise, the defendant deraigns his title to the "*minerals*," &c., from the same ancestor through several mesne conveyances. The witness, Smith, mentioned in the last paragraph of the opinion, was one of the intermediary owners of the mineral rights, &c.,

between said Frost and appellant Williams.   Williams disclaimed all interest in the surface property sued for excepting three acres with the structures thereon erected.

There was no evidence that any part of said three acres had coking ovens erected thereon, or that appellant was occupying any part thereof for such ovens.

McGUIRE & COLLIER, and WEBB & TILLMAN, for appellant, cited *Tenn. & Coosa R. R. Co. v. East Ala. R. R. Co.,* 75 Ala. 524; *Turner v. Reynolds,* 23 Penn. St. 199, 206; *Marvin v. Brewster Iron Mining Co.,* 55 N. Y.; s. c. 14 Am. Rep. 322; 3 Washburn on Real Prop. 386, 396; *Kent v. Wait* 10 Pick.; *Strong v. Oden,* 12 Mass. 157; 14 Am. and Eng. R'y Cases, 483; 2 Wall. U. S. 177.

HEWITT, WALKER & PORTER, *contra,* cited 3 H. of L. Cas. 25; Shep. Touch., 100; 34 Bard, 566; 32 N. Y., 405; 2 Beas., N. J., 322; 6 Mees & Wels., 173; 11 Mees & Wels, 418; 1 Hurl. & Norm. 705; 2 B. & C., 197; L. J. ch. vol. 35, pt. 1, p. 337; 12 Q. B. 754; 6 El. & B. 592; *Ib.* 643; 5 Mees & Wels. 59, 70; 7 L. R. (ch. app,), 700, 718; 49 Me. 207; 14 Am. Rep. 322.

SOMERVILLE. J.—The present suit, which is one of ejectment under the statute, involves a controversy between the superjacent and subjacent owners of land, upon which there is a coal mine, opened and in process of being worked by the defendant.   The plaintiff, Gibson, is the owner of the surface, and the defendant Williams, of the "coal and other minerals," with certain incidental and other rights, derived through various mesne conveyances from one Green B. Frost, the original owner in fee simple of the premises. In November, 1881, Frost conveyed to one Peters *"all the coal* and *other minerals* in, under and upon" these lands, which are fully described in the deed; "and also all *timber* and *water* upon the same, necessary for the development, working and mining of said coal and other minerals, and the preparation of the same for market and the removal of the same; and also the *right of way,* and the right to build roads of any description over the same, necessary for the convenient transportation of said coal and other minerals from said land, and the conveying and transporting, to and from said lands, all materials and implements that may be of use in the mining and removal of said coal and other

minerals, or in the preparation of the same for market."
Subsequently, in August, 1884, Frost conveyed the same
lands to one C. L. Frost and J. B. Reeves, *reserving*, by ex-
ception from the lands sold, the mineral rights and other
interest previously conveyed to Peters, using the same lan-
guage of description adopted in the deed to him.   The de-
fendant is shown to have acquired by deed, through sundry
mesne conveyances, the precise interest which. Peters owned.

This interest may be briefly described under three general
heads:    (1) A grant of all the *coal and other minerals*
upon, or in the land;   (2) So much of the *timber* and *water*
on the land, as may be necessary (*a*) for the development,
working and mining of the coal and other minerals, and (*b*)
for the preparation of the same for the market, and their
removal from the soil and the premises;   (3) *The right of*
*way*, by roads of any description, to and from the lands, so
far as may be necessary for the transportation of all min-
erals mined, and of materials and implements needed in the
business of mining and the preparation of the minerals for
market.

The material question is what, if any *surface* rights pass
to the grantee under the first head, which is a grant of all
the coal and other minerals upon and in the land.

This is dependent in some measure upon the nature and
characteristics of the thing granted.   Minerals which are
unsevered from the soil, or, as sometimes said, which are "in
place," are parts of the freehold, and constitute landed
property.   They are capable of a possession distinct from
that of the surface, and may form a separate corporeal hered-
itament, which is the subject of a distinct inheritance.   The
title of the soil, as such, including the surface, may be
vested in one person; and that of the mines and minerals on
it in another.   It is only when the minerals are severed from
the soil that they become personal chattels, and it is only
where the right to dig or to mine them is not *exclusive* that
it may be classed as an incorporeal right, or easement merely
in the nature of a license.—Bainbridge on Law Mines and
Mining (Amer. Ed.), pp. 3, 261; *Massot v. Moses* (3 S.
Ca., 168); s. c., 16 Amer. Rep. 697; *Caldwell v. Fulton*, 31
Penn. St., 475; *Melton v. Lambard*, 51 Cal. 258; *Ryeman*
*v. Gillis* (57 N. Y.); s. c. 15 Amer. Rep. 464.

The express grant of all the minerals, or mineral rights
in a tract of land, is, by necessary implication, the grant
also to work them, unless the language of the grant itself

repels this construction.   This is the result of the familiar maxim that "when any thing is granted, all the means of obtaining it, and all the frrits and effects of it are also granted."—Shep. Touch. 89; 11 Coke, 52a.   This involves the incidental right to penetrate the surface of the soil for the minerals, and to use such means and processes for the purpose of mining and removing them as may be reasonably necessary, in the light of modern inventions, and of the improvements in the arts and sciences, but without injury to the right of support for the surface, or superincumbent soil, in its natural state.—*Marvin v. Brewster Iron Mining Co.*, 55 N. Y. 538; s. c. 14 Amer. Rep. 322; *Wilms v. Jess* (94 Ill. 464); s. c. 34 Amer. Rep. 242; Bainbridge on Mines and Mining, *35, *62, *63.   It is said by a standard English author touching this subject:  ."The right to work mines is so inseparable from the grant of them that it has been expressly decided, not only that the right to enter and work mines is necessarily incident to the grant of mines, without any express authority for that purpose; but that this power can not be restrained by a special power given in the *affirmative*, which would authorize more acts than would be implied by law, but which will in no wise exclude the full operation of the law."—Bainbridge on Mines and Mining, (Amer. Ed.), *34, *35.

It is contended that this incidental right to work the mines on the land is limited by the special grant of certain timber and water privileges, and of the right of way to and from the mines, and that the mention of these privileges, under the maxim *expressio unius est exclusio alterius*, would rebut the grant of any right to occupy the surface of the soil for miners' houses, or other like purposes.   It is often said that great caution is frequently necessary in the application of this maxim, and of its twin legal aphorism of synonymous meaning, *epressum facit cessare tacitum.*—Broom's Legal Max. *506.   It is obvious that without the right of surface occupation, to some extent, the grant in question is rendered nugatory.   The principle is well settled that one who has the exclusive right to mine coal upon a tract of land has the right of possession even as against the owner of the soil, so far as is reasonably *necessary* to carry on his mining operations.—*Turner v. Reynolds*, 23 Penn. St. Rep. 199; *Rogers v. Taylor*, 38 Eng. Law & Eq. 574; *Tenn. & Coosa R. R. Co. v. East Ala. R. R. Co.*, 75 Ala. 524, 525.   To construe away this right would be to construe away the grant

[Williams v. Gibson.]

itself, which can not be enjoyed without it. It is our opinion that the enumeration of these special privileges was not intended to exclude another which was absolutely necessary to the very life of the grant itself. The right to use timber would not pass by implication.—Bainbridge on Mines and Mining, *64. This was, therefore, the acquisition of a new and valuable right. The right of way and water privileges were also more comprehensive possibly than would have been yielded pacifically by mere construction. At any rate these several grants themselves necessarily imply the right to occupy so much of the surface as might be needed to open and work the mines. There could be no use of timber, or water, or right of way, except in connection with working the mines, and there could be no working of the mines without an occupation of the surface in the vicinity of the shafts, slopes, or other requisite openings. These specifications strengthen rather than repel the implication in question.—*Marvin v. Brewster Iron Mining Co.*, 14 Amer. Rep. 329, *supra*; Bainbridge on Mines and Mining, *34, *35.

The owner of the minerals and mining rights must use his own so as not unreasonably to injure his neighbor, the owner of the surface or soil, and it is, we repeat, now settled by the authorities quite universally that he must conduct his mining operations so as to leave a sufficient support for the surface.—*Carlin v. Chappel* (101 Penn. St. 348); s. c. 47 Amer. Rep. 722, and cases cited; *Harris v. Ryding*, 5 M. & W., 69; Rogers on Mining, 455. In other words, the exclusive grantee of minerals in lands is entitled to dig and carry away so much of them as he can excavate from the soil without injury to the surface owned by the grantor, the mining right being servient to the surface to the extent of sufficient supports to sustain it in its natural state.—*Jones v. Wagner*, 5 Amer. Rep., 385. But he is not liable for any incidental damages necessarily occasioned by the ordinary and careful operation of his mines, not injurious to the surface, as for example, the loss of springs by the owner of the soil.—*Coleman v. Chadwick*, (80 Penn. St. 81); s. c. 21 Amer. Rep. 93; or the disturbance of the peace and comfort of the surface owner's dwelling by necessary blasting in the mines.—*Marvin v. Brewster Iron M'g Co.*, 14 Amer. Rep., 322.

These incidental rights of the miner, which are appurtenant to the grant of the mineral rights, are to be gauged by

[Williams v. Gibson.]

the necessities of the particular case, and, therefore, vary with changed conditions and circumstances. He may occupy so much of the surface, adopt such machinery and modes of mining, and establish such auxiliary appliances and instrumentalities, as are ordinarily used in such business, and *may be reasonably necessary for the profitable and beneficial enjoyment of his property.* But he is not limited, as we have already said, to such appliances as were in existence when the grant was made, but may keep pace with the progress of society and of modern invention.—Bainbridge on Mines & Mining, *63, *64; *Marvin v. Brewster Iron Mining Co.,* 14 Amer. Rep. 322, *supra.* It has been accordingly held in England that a reservation of mines of coal (which is usually the same in legal effect as a grant), with rights of way for transportation, involved the right to construct a modern railway, although this mode of transportation was unknown at the time of the grant. The ground of the decision seems to have been that without use of the railway for shipment, the mines could not, under the evidence, have been worked beneficially, or with reasonable profit.

We do not construe the language of the present grant, or reservation as it appears in the deeds of the plaintiff and those under whom he claims, to confer any right by implication, or otherwise, to use the surface of the land for the purpose of erecting coke ovens, designed for the conversion of coal into coke. His only right is to mine and transport coal in its first marketable state. The contract clearly contemplated nothing else. Such is the usual construction placed upon similar grants, the principle being thus stated by Bainbridge in his treatise on Mines and Mining, *63: "An owner of that kind can not use the surface or any of the materials of the land for changing the character of the mineral to which he is entitled, as for converting coal into coke, clay into bricks, or for smelting the metallic ores, much less for any further purpose of manufacture."

The evidence shows that the defendant claimed the right to occupy as much as *three acres* of the surface of plaintiff's land as incident to his grant. Upon this area he had erected five two-story framed miners' houses; four log cabins for the occupancy of employes; an air-shaft for conveying smoke from and ventilating the mines; a powder house for keeping powder used for blasting; a blacksmith shop; and a storehouse for furnishing the miners with supplies. Which of these improvements are reasonably necessary for the profita-

[Williams v. Gibson.]

ble and beneficial working of the mines is a question of fact to be determined from the evidence by the jury. And so likewise the inquiry as to how much of the surface of the land may be reasonably needed for this purpose. It may be that other suitable lands, conveniently situated, could be obtained at a reasonable price for the site of the miners' houses, the cabins and the store; or the contrary may be true. It may be that the mine was so far distant from the market for supplies, and that prices in neighboring stores were so extravagant, as to render necessary the establishment of a supply store both for the economy of time and money of the employes. It may be that such a store was a mere convenience, and not a necessity, within the meaning of the law, for this necessity can not be deemed to exist if a similar privilege can be otherwise secured by reasonable trouble and expense.—*O'Rorke v. Smith*, 23 Amer. Rep. 446, *note;* Tiedeman on Real Prop. §§ 606, 609. These and other like considerations it would be proper for the jury to consider in solving the question of *necessity*—a word of relative import, which may mean, on the one hand, less than imperative need, and, on the other, more than mere suitable convenience.

It is manifest that the rulings of the Circuit Court are not in harmony with these views, including both the instructions to the jury and the rulings on the evidence.

The defendant should have been permitted to show to what extent his occupancy of the surface of the lands, around the opening of the mine, was reasonably necessary, under the above rules, to the prosecution of the mining business.

The evidence as to how much of the surface was or might be needed for the erection of coke ovens was properly excluded.

It was not competent to show that particular individuals in the neighborhood carried on a mine without a store house for supplies, although a usage in the matter by other miners similarly situated might be relevant if it had prevailed sufficiently long, and possessed the other requisite characteristics of an established custom. But the business of mining in this particular part of the State is probably of a date too recent at this time to give such a custom the age necessary to its validity.

The court did not err in allowing evidence to be introduced showing that two other stores were located near the mines. It was quite as relevant to show that there were two stores near by as that there were a hundred, with a view of testing

the urgency of the alleged necessity impelling the defendant to establish one for his own needs.    The two cases differ only in degree, not in kind.

The value of the improvements erected by the defendant around the mines was relevant as affecting the rental value of the three acres of land sued for—the defendant being liable for rent by way of use and occupation in the event of plaintiff's recovery.

The *verbal* contract of purchase, which the witness Smith testifies he made, of part of the surface in controversy, from Frost & Reeves, who sold to the plaintiff, was never reduced to writing, nor accompanied by a payment of any part of the purchase-money.    It was, therefore, void under the statute of frauds, and could confer no rights on the alleged purchaser which would prejudice those of either party to the present suit.

The judgment is reversed and the cause remanded.