# Hooper *v.* Dora Coal Mining Co.

*Bill in Equity for Injunction against Trespass.*

1. *Mineral rights severed from ownership of soil.*—A grant or reservation of the minerals in a tract of land, severed from the ownership of the surface, carries with it the right to penetrate through the surface to the minerals, for the purpose of mining and removing them, by the adoption and use of such machinery, methods, appliances and instrumentalities as are reasonably necessary and ordinarily used in such business; and, it may be, for the deposit or storage of the minerals in their first marketable state, until they can be transported with reasonable diligence. But these incidental rights must be exercised with due regard to the rights of the owner of the soil, without injury to his right of support for the surface, and without any permanent damage thereto, not necessary to the proper and beneficial enjoyment of the right to mine; they cease when the minerals on the land are exhausted, and do not justify the use of the surface for the deposit, loading and transporting of minerals taken from other adjacent lands.

2. *Injunction against trespass.*—As a general rule, a court of equity

will not grant an injunction to restrain the commission or repetition of a trespass, when the trespasser is solvent, and an action at law for damages affords an adequate remedy; but there are injuries, sometimes arising from the peculiar nature or use of the property, which can not be adequately compensated by an action at law for damages; and when the injuries are continuous, or permanent in their effects, destroying the substance of the inheritance, ruining the estate, or permanently impairing its future use and enjoyment in the manner in which the owner has been accustomed to use and enjoy it, pecuniary compensation is inadequate, and an injunction will be awarded.

3. *Same.*—A court of equity will grant an injunction at the suit of the owner of the surface of lands which are valuable for agricultural and grazing purposes, against the owner of the minerals and mineral rights, to restrain him from depositing on the land foul water, slate, and other noxious substances brought up through the opening from subjacent lands which he is mining.

APPEAL from the Chancery Court of Walker.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on the 1st June, 1891, by John de B. Hooper against the Dora Coal Mining Company, a private corporation, to enjoin and restrain the defendant from depositing on a tract of land, of which the complainant claimed to own the surface, foul water, slate, and other noxious substances, brought up through the opening of the defendant's mine on the land, from other subjacent lands which the defendant was also mining. The material allegations of the bill are stated in the opinion of the court. The Chancery Court sustained a demurrer to the bill, on the ground that the complainant had an adequate remedy at law, and this decree is now assigned ar error.

JOHN J. MOORE, and B. K. COLLIER, for appellant.—The bill shows permanent and irreparable injury, for which an action at law for damages would not afford adequate compensation, and therefore makes a case for an injunction. High on Injunctions, §§ 697, 701; *Chambers v. Ala. Iron Co.*, 67 Ala. 353; *Nininger v. Norwood*, 72 Ala. 277; *Ogletree v. McQuaggs*, 67 Ala. 580; *Sullivan v. Rabb*, 86 Ala. 433; *Osborn v. U. S. Bank*, 9 Wheat. 738; *Watson v. Sutherland*, 5 Wall. 74; *Clark v. Railroad Co.*, 44 Ind. 248; *Schneider v. Brown*, 85 Cal. 205; *Lembeck v. Nye*, 47 Ohio, 336; *Gilchrist v. Vandyke*, 21 Atl. Rep. 1099; *Pusey v. Wright*, 31 Penn. St. 387; *Grant v. Crow*, 47 Iowa, 632; 56 Cal. 155, 161; L. Rep. 7 Ch. 699.

COLEMAN & SOWELL, *contra*, cited Bainbridge on Mines & Mining, 35, Amer. ed.; *Williams v. Gibson*, 84 Ala. 228; *Turner v. Reynolds*, 23 Penn. St. 199; *Wood v. Sutcliff*, 42 Eng.

[Hooper v. Dora Coal Mining Co.]

Ch. 165; *Clifton Iron Co. v. Dye*, 87 Ala. 468; *Thomas v. James*, 32 Ala. 723; *Brooks v. Diaz*, 35 Ala. 599; *Mulvany v. Kennedy*, 26 Penn. St. 44; *Hatcher v. Hampton*, 7 Geo. 49; *Waldron v. Marsh*, 5 Col. 119; 12 Nev. 251; *Jerome v. Ross*, 7 John. Ch. 334; Hilliard on Injunctions, 322, § 3; High on Injunctions, 3d ed., 546, § 706.

PER CURIAM.—The bill alleges that complainant is the owner of the land therein described, "except all the coal and other minerals in, under, and upon said lands, and also except all timber and water upon the same necessary for the development, working and mining of said coal and other minerals, and the preparation of the same for market, and the removal of the same; and also the right of way, and the right to build roads of any description over the same necessary for the convenient transportation of said coal and other minerals from said coal lands, and the conveying and transporting to and from said lands all materials and implements that may be of use in the mining and removal of said coal and other minerals, or in the preparation of the same for market." It further alleges that defendant has opened a mine on the land, and erected thereon a tram-way, bridges, trestles, weigh-houses, blacksmith-shops, and other buildings and works used for mining coal; that the company has ceased to mine the coal lying beneath the surface of the land to any appreciable extent, and has extended the openings of the mines to adjacent lands, from which large quantities of coal are mined, using the plant upon complainant's land to load and transport such coal, not for loading and transporting coal mined beneath the surface of complainant's land. The bill further avers, that the land of complainant is very valuable for agricultural and grazing purposes; and that the defendant, its agents or employes, dump vast quantities of slate and other obnoxious refuse, taken from the mines on the adjacent lands, on to the agricultural and grazing lands of complainant; that they also permit vast quantities of foul water to accumulate in the mines of the adjacent lands, which, by means of machinery, is ejected upon the surface of complainant's lands. The bill, which is filed by appellant, seeks to restrain appellees from using complainant's land for the purpose of loading and carrying away coal mined on such adjacent lands; also, from dumping on to complainant's land slate, refuse water, and other substances and fluids taken therefrom. The court overruled all the grounds of demurrer to the bill, except the second, which is to the effect that complainant has an adequate remedy at law.

It will be observed that the case made by the bill is of a mixed character—one where the surface is used for the purpose of mining the subjacent minerals to a small extent, and where it is used for the purpose of working mines on lands lying adjacent to a much greater extent. The bill does not inform us whether the right of defendant to mine is by reservation in a deed to the surface, or by a grant of the minerals, the grantor reserving to himself the surface; but this is immaterial—the relative rights and duties of the parties are the same. It is well settled, that where one person is the owner of the surface, and another of the subjacent minerals, the surface is servient to the mining right as to the occupation and use of so much as may be reasonably necessary for the beneficial and profitable working of the mines. A reservation or grant of the minerals, severed from the ownership of the surface, carries with it the right to penetrate through the surface to the minerals, for the purpose of mining and removing them. This includes the adoption and use of such machinery, methods, appliances and instrumentalities as may be reasonably necessary, and are ordinarily used in such business; and it may be, for the storage of minerals in the first marketable state until they can be transported with due diligence.— *Williams v. Gibson*, 84 Ala. 228. These incidental rights must be exercised with due regard to the rights of the surface-owner, without injury to the right of support for the surface, and without any permanent damage thereto, not necessary for the proper and beneficial enjoyment of the right to mine. It has been said: "The incidental power would warrant nothing beyond what is strictly necessary for the convenient working of the coal; it would allow no use of the surface, no deposit upon it to a greater extent, or for a longer duration than should be necessary, no attendance upon the land of unnecessary persons."—*Cardigan v. Armitage*, 2 Barn. & Cress. 197. Possibly, under our rulings, the adverb "strictly" confines the use of the easement within too narrow limits. "Reasonably necessary" is the language of this court, and we prefer to make no change in a rule which we consider so conservative.— *Williams v. Gibson*, 84 Ala. 228, 232. It does not allow defendant to use the surface for the deposit of slate, or other refuse matter, taken even from the mines underneath.—*Marvin v. Brewster Iron Mining Co.*, 55 N. Y. 538; 14 Am. Rep. 322.

The right to use the surface, implied from the reservation or grant, arises from, and ceases with, the necessity of the case. When all the subjacent ore is dug and removed, and

[Hooper v. Dora Coal Mining Co.]

the mine is exhausted, there no longer exists any necessity for the use of the surface. Without an express reservation or grant, the right to use the plant erected on the surface of complainant's land, for the loading and transporting of coal mined on adjacent lands, does not exist.—*Midgely v. Richardson*, 14 M. & W. 595. As regards the dumping of slate and other obnoxious substances, and ejecting foul water on complainant's land, the liability of defendant is the same as that of a party who occasions injury to land unconnected with the land in which the mines are worked—the same as if he were not owner of the minerals on complainant's land.

The grounds of demurrer, raising the question as to the right of defendant to use complainant's land for loading and transporting coal mined on other lands, and for the deposit of such substances, whether taken from the subjacent mines or others, having been overruled, the direct and sole question is, whether, on the facts averred in the bill, an injunction will lie to prevent such injuries. The foregoing principles have been stated as aiding its determination. Under the averments of the bill, dumping the slate and other substances on complainant's land is clearly a trespass. As a general rule, an injunction will not be awarded, in the absence of special circumstances, to restrain the commission or repetition of a trespass, when an action at law for the recovery of damages affords an adequate remedy. But the jurisdiction is well established, when from the peculiar nature or use of the property, or the probability of a multiplicity of suits arising from the frequent and continued repetition of the trespass, the injury can not be adequately compensated by an action for damages. It is difficult to define with any degree of definiteness what will constitute such irreparable injury as to warrant the interposition of the extraordinary but conservative remedy of injunction. The general rule is, that when the trespass is of a temporary nature, or of such character and effect as may be readily compensated in damages, the trespasser being solvent, equity will not depart from the settled rule to leave the aggrieved party to his remedy at law. As to the jurisdiction of equity in such cases, there is a well-recognized distinction between injuries temporary and fugitive in their nature, and injuries permanent, continuous, and of frequent occurrence. The former may be readily redressed at law; but, when the injuries are of the latter character, which destroy the substance of the inheritance, or ruin the estate, or permanently impair its future use and enjoyment in the manner in which the owner has been accustomed to use and enjoy it, pecu-

[Hooper v. Dora Coal Mining Co.]

niary compensation is inadequate, and equitable interference demanded.—*Mayor v. Groshow*, 30 Md. 505; *Nininger v. Norwood*, 72 Ala. 277. In *Hobbs v. Amadore and Sa. C. Co.*, 66 Cal. 161; it was held an unlawful act for a company engaged in mining to so work over and use the mine as either directly or indirectly to cover the land of another with the sand, gravel and debris from such mines, thereby rendering it valueless for agricultural purposes, and that such acts will be restricted by injunction.

It is true the averments of the bill are general, and might have been more definite and precise as to the extent of the injury, present and prospective; but they are sufficient to make a case of irreparable injury within the meaning of that term, as understood and employed in equity jurisprudence. Defendant, having become possessed in a lawful way of a location on the surface of complainant's land, and having nearly exhausted the subjacent coal, extended the opening of its mines into adjacent but unconnected lands, brings the coal therein mined to the surface of complainant's land to be there loaded and transported, and deposits on his land noxious refuse substances and foul water. The frequent and continuous deposit of vast quantities of slate on lands valuable and used for agricultural or grazing purposes, and the emptying of foul or filthy water thereon, pumped from mines where suffered to accumulate, certainly deteriorates its value and usefulness for such purposes, and permanently injures its future use and enjoyment, producing irreparable injury, to redress which pecuniary compensation is inadequate.—*Sullivan v. Babb*, 86 Ala. 433; *Ogletree v. McQuaggs*, 67 Ala. 580.

The case made by the bill comes within the rule stated above, and the demurrer should have been overruled.

Reversed and remanded.

The opinion in this case was prepared by the late Mr. Justice CLOPTON, and was adopted by the court after his death.