153 So.2d 614

**GULF OIL CORPORATION et al.**

**v.**

**G. H. DEESE.**

**I Div. 861.**

Supreme Court of Alabama.

May 9, 1963

C. C. Richmond and Wm. R. Harris, Jackson, Miss., and Sam. W. Pipes, III, Lyons, Pipes & Cook, Mobile, for appellants.

Vincent F. Kilborn and Benjamin H. Kilborn, Mobile, for appellee.

GOODWYN, Justice.

Action of trespass quare clausum fregit brought by appellee, G. H. Deese, against appellants, Gulf Oil Corporation, et al., to recover damages for injury to the surface of land owned by Deese in the Citronelle Oil Field, allegedly resulting from the construction and operation by Gulf of an oil well on adjacent land. Gulf, at the time, held a lease of the oil under both parcels.

The appeal is from a judgment rendered on a jury verdict in favor of Deese.

On December 14, 1949, Deese purchased several parcels of land in Mobile County from Thomas J. Taylor, et al., subject to certain exceptions and reservations. The property is described in the deed as follows:

"Lots One, Two, Three, Four, Five, Six of Block One, and Lots One, Two, Three, Five, Six and South half of Lot Four, Block Two, W. B. Miller's Second Addition to Town of Citronelle, according to plat thereof recorded in Deed Book, 132 N.S., page 132, EXCEPTING from Lots Five and Six of W. B. Miller's Second Addition to Town of Citronelle the following property:

"Four and 1/8 acres sold to Donald Ray and Camilla Odom described as follows: That piece or parcel of land commencing 130 feet North from where Forest Street intersects Highway 45 on the West side of said Highway; thence North along the West side of Highway 45 Nine Hundred Seventy eight (978) feet to line between Lots Six and Seven of Miller's Addition to Town of Citronelle; thence South along said line Nine Hundred Twenty Four (924) feet to a stake 130 feet North of Forest Street; thence East Three Hundred Sixty Six (366) feet to place of beginning on the West side of Highway 45, being a portion of Lots Five and Six of W. B. Miller's Subdivision of the Town of Citronelle, containing 4 1/8 acres, more or less.

"Part of South end of Lots Five and Six sold to J. W. Newburn described as follows: Start at the Southwest corner of Lot Six, Block 2, Miller's Second Addition to Citronelle, run East along North side of Forest Street to West side of Highway 45; thence North along the West side of Highway 45 to west boundry line of Lot Six; thence South One Hundred Thirty (130) feet to place of beginning, being

part of South end of Lots Five and Six of Miller's Second Addition to Town of Citronelle.

"ALSO EXCEPTING and reserving unto the parties of the first part any and all oil, gas and minerals of any and every nature upon or under the above said lands, it being distinctly understood that no oil, gas or mineral rights are hereby conveyed with said lands, but all of said rights are expressly reserved and retained by the grantors herein named."

The habendum clause of the deed is as follows:

"TO HAVE AND TO HOLD the said above described property unto the said party of the second part, together with all and singular the tenements, hereditaments, and appurtenances thereunto belonging or in anywise appertaining, except all of the oil, gas and minerals and all the oil, gas and mineral rights above expressly excepted and reserved by the parties of the first part,

and unto his heirs and assigns in fee simple."

The parcels allegedly trespassed upon and damaged by Gulf, principally by leveling and grading the ground for the well site, cutting trees, removing wire fencing, and pouring oil and salt water thereon, are Lots 1, 2, 3 and 5 of Block 2 of W. B. Miller's Second Addition. The bore of Gulf's well is on the North half of Lot 4 of Block 2, with a part of the well site being on Lot 5. It will be noted that the North half of Lot 4 was not included in the Taylor deed to Deese. There is no dispute that Gulf, during the time here pertinent, held a valid lease to the oil under Lots 1 through 5, unless the Taylor deed to Deese, as Deese contends, conveyed to him the minerals thereunder as well as the surface (except as to the North half of Lot 4, the mineral interest in which Gulf acquired through a chain of title beginning with a deed from William B. Miller and wife to Emily B. Warren, dated August 7, 1908). The following is a rough sketch of the lots showing the location of the well site:

The alleged trespass appears to be based on the following two premises:

1. Deese, and not Gulf, owns the minerals under Lots 1, 2, 3, and 5, as well as the surface thereof, and Gulf has no right to use the surface. The insistence is that Deese acquired the minerals under the Taylor deed to him.

2. Even if Gulf owns the minerals under these lots, it has no right, in connection with the construction and operation of this well, to go upon or damage the surface owned by Deese because the well is not located on land of which Deese owns the surface, but is on adjacent land in which Deese has no interest.

Our conclusion is that neither premise is meritorious, and that Gulf's requested affirmative charge should have been given.

1.

Deese's position as to this premise is thus stated in his brief:

"It is the contention of the appellee that the last 'exception' paragraph clearly only excepted and reserved to the grantors therein the minerals under Lots 5 and 6 of the Second Addition, following as it does in order the Exceptions mentioned in paragraph one of the description pertaining to Lots 5 and 6 of the Second Addition. At best it is ambiguous what this 'exception' covers. Does the exception from 'the above said lands' apply to all the land described in paragraph one of the description or just to Lots 5 and 6 in the Second Addition? Does the allegation that no oil, gas and mineral rights are conveyed 'with said lands' apply to all the land described in paragraph one of the description or just to Lots 5 and 6 in the Second Addition? And for that matter since said deed conveys two Lots 5 and 6, one set being in Block One and the other being in Block Two of the Second Addition to which set of Lots 5 and 6 is the mineral exception making reference?"

We are unable to follow this contention.

"The real inquiry in construing the terms of a deed is to ascertain the intention of the parties, especially that of the grantor, and if that intention can be ascertained from the entire instrument, including its several parts, resort to arbitrary rules of construction is not required." Hardee v. Hardee, 265 Ala. 669, 674, 93 So.2d 127, 131. From a consideration of the entire deed, it seems clear it was intended to except and reserve the minerals upon or under all of the land conveyed. To hold that the provision excepting and reserving "all oil, gas and minerals * * * upon or under the above said lands" refers only to Lots 5 and 6 would require a strained and unwarranted construction of this very general provision, especially when considered in connection with the habendum clause. Nor can there be basis for saying the provision has reference to the parts of Lots 5 and 6 excepted from the conveyance. In excepting such land, the exception itself quite obviously had the effect of excluding the minerals thereunder, thus making it clearly unnecessary to specifically exclude and reserve such minerals. This leads to the inescapable conclusion that the exception and reservation of minerals contained in the deed did not refer to the minerals upon or under the land excepted from the deed.

2.

Deese recognizes the principle that "the owner of a mineral interest under land has the right to the reasonable use of the surface of said land to extract the minerals therefrom" (citing in support: Phillips v. Sipsey Coal Mining Co., 218 Ala. 296, 118 So. 513; Bagley v. Republic Iron and Steel Co., 193 Ala. 219, 69 So. 17; Bibby v. Bunch, 176 Ala. 585, 58 So. 916; Hooper v. Dora Coal Mining Co., 95 Ala. 235, 10 So. 652; Williams v. Gibson, 84 Ala. 228, 4 So. 350, 5 Am.St.Rep. 368), but insists that application of the following principle makes Gulf a trespasser on the surface owned by him, viz: "The right to use the surface of land as an incident of ownership of mineral rights does not carry with it the right to use

the surface in aid of mining or drilling operations on other or adjoining lands" (citing in support: Phillips v. Sipsey Coal Mining Co., 218 Ala. 296, 118 So. 513, supra; Corona Coal Co. v. Hendon, 208 Ala. 513, 94 So. 527; Brasfield v. Burnwell Coal Co., 180 Ala. 195, 60 So. 382; Hooper v. Dora Coal Mining Co., 95 Ala. 235, 10 So. 652, supra).

In other words, Deese takes the position that Gulf, in boring the well on the North half of Lot 4, had no right to use the surface of Lots 1, 2, 3 and 5, or any of them, in connection with the construction and operation of said well, even though Gulf owned the oil under said lots.

There can be no doubt that the cited cases are supportive of the principle relied on by Deese when applied to the mining of solid minerals, such as coal and iron ore. However, the crucial question, now before us for the first time, is whether the same principle should be equally applicable when oil wells are involved.

Appellants' counsel state in their brief that they have found no case just like the one before us; and our research reveals none. However, there are persuasive reasons leading to the conclusion that the principle should not apply when oil wells are constructed and operated pursuant to the provisions of Act No. 1, appvd. May 22, 1945, Gen.Acts 1945, p. 1, as amended (included in Recompiled Code 1958 as §§ 179(24) to 179(55), Tit. 26), such as the well here involved. For a summary of the Act's principal provisions, creating a State Oil and Gas Board, with authority, among other things, to establish drilling units and to require the several owners in a drilling unit to pool their interests, see: Summers, The Law of Oil and Gas, Vol. 1, § 83.1, p. 283.

The mining of solid minerals has aspects essentially different from those involved in drilling and operating oil wells. For instance, there may be a pool of oil under several tracts of land with each tract having a different ownership, yet all of such oil might be removed by a single well on one of the tracts simply because of its fluidity, to the detriment of the owners of the other tracts. Basically, this is the reason for the need of laws providing for the pooling of diverse interests into one or more drilling units for the production of oil, as has been done in Alabama by the enactment of Act No. 1, supra, as amended. Whether, in the absence of such pooling law, there might be reason for applying the same principle to oil as is applicable to solid minerals, there is no occasion to decide. We are clearly of the opinion, in view of Act No. 1, as amended, that the reason for application of the principle to the mining of solid minerals does not exist with respect to the construction and operation of oil wells pursuant to the pooling provisions of said Act. From Beardsley v. City of Hartford, 50 Conn. 529, 542, is this apt statement:

"If the reasons on which a law rests are overborne by opposing reasons, which in the progress of society gain a controlling force, the old law, though still good as an abstract principle, and good in its application to the same circumstances, must cease to apply as a controlling principle to the new circumstances."

Cf. Sheffield & Tuscumbia Street Railway Co. v. Rand, 83 Ala. 294, 298, 3 So. 686; Dunham v. Williams, 37 N.Y. 251.

The Act itself (§ 1; § 179(24), Tit. 26, Recompiled Code 1958) recognizes the distinctive qualities of oil in the following declaration of legislative policy, viz.: "In recognition of past, present, and imminent evils occurring in the production and use of oil and gas, as a result of waste in the production and use thereof and as a result of waste in the absence of co-equal or correlative rights of owners of crude oil or natural gas in a common source of supply to produce and use the same, this law is enacted for protection against such evils by prohibiting waste and compelling ratable production."

Act No. 1 contains this significant provision, viz: "The portion of the production allocated to the owner of each tract included in an integrated or pooled unit formed by an integration or pooling order shall, when produced, be considered as if it had been produced from such tract by a well drilled thereon." (Section 13, Act No. 1; § 179(36), Tit. 26, Recompiled Code 1958.)

■ The well here was located and constructed pursuant to a pooling order under Act No. 1, and Deese's land was a part of the pooled unit. If Deese owned the oil under his land, he would share in the oil produced from the well, even though he might not have any interest whatever in the tract where the well is located. In that situation, would it not be fair and reasonable that the surface owned by him should be available for use in connection with the construction and operation of the well, so long as such use is reasonably necessary for drilling and producing oil from the pool? Manifestly so, it seems to us. The question then arises: If he does not own any interest in the oil, and hence receives no benefit from its production, then why should his surface interest be burdened by action taken in recovering the oil? The obvious answer is that he acquired the surface subject to the right of the owner of the oil thereunder to use the surface in such manner as is reasonably necessary to recover the oil. And Gulf is the present owner of that right. It seems apodictic that Deese has no cause to complain about Gulf's partial use of the surface of Lots 1, 2, 3 and 5, when it has the right, as owner of the oil thereunder, to use all of the surface of said lots if reasonably necessary in recovering the oil. In other words, if all action taken by Gulf in producing oil had taken place on the surface owned by Deese he would have no right to complain, so what reasonable basis could there be for saying that Gulf's partial use of the surface was wrongful (unless, of course, such use was not reasonably necessary in recovering the oil)?

The case was tried as an action of trespass quare clausum fregit. None of the counts charges negligence or wantonness. Since Gulf had the right to use the surface of the lots in a manner reasonably necessary to recover the oil, it had, to that extent, an ownership in the surface and the concomitant right to enter and possess it. Accordingly, it cannot be guilty of trespass quare clausum fregit. As said in Southern Railway Company v. Sanford, 262 Ala. 5, 8, 76 So.2d 164:

"It is a perfect defense in an action of trespass *quare clausum fregit* to show that the defendant owns the land in question and that he had the right to enter. Southern Ry. Co. v. Hayes, 183 Ala. 465, 62 So. 874; Sadler v. Alabama Great Southern R. Co., supra [204 Ala. 155, 85 So. 380]; Lacey v. Morris, 215 Ala. 302, 110 So. 379; Story v. McWhorter, supra [216 Ala. 604, 114 So. 206]; Landrum v. Davidson, 252 Ala. 125, 39 So.2d 662; Womble v. Glenn, 256 Ala. 374, 54 So. 2d 715."

No question is presented in this case concerning the validity of Act No. 1, as amended. See: 24 Am.Jur., Gas and Oil, § 150.5, 1962 Cum.Supp., p. 97. For annotation on the validity of compulsory pooling statutes, see 37 A.L.R.2d 434. See, also, Annotation, Constitutionality of Statute limiting or controlling exploitation or waste of natural resources, 78 A.L.R. 834

The judgment is reversed, and the cause is remanded to the trial court for such further proceedings therein as the parties may be advised.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and COLEMAN, JJ., concur.