These appeals involve three consolidated actions to quiet title to an undivided 1/2 mineral interest in four residential lots in Mobile County. The dispute arose from a purported reservation of the mineral interest in the deeds from the developer of the subdivision.
The parties all initially share a common chain of title. On September 1, 1949, C.M. Cleveland and his wife, Elizabeth Cleveland, conveyed 386 acres of land to Ora Harwell. In the conveyance, the Clevelands *Page 942 
reserved an undivided 1/2 interest in the oil, gas, and minerals. The Clevelands' mineral reservation is not in dispute.
On March 5, 1962, Ora Harwell and his wife, Irene Harwell, conveyed the property they had received from the Clevelands, including their undivided 1/2 mineral interest, to Ivan H. Nall and his wife, Virginia Grace Nall. The deed from the Harwells to the Nalls did not contain a reservation of the mineral interest; therefore, the Nalls received the 386 acres and the Harwells' undivided 1/2 mineral interest. The Nalls subdivided a portion of the land they had obtained from the Harwells into the Stately Pines subdivision. The Nalls subsequently conveyed lots 5, 9, 10, and 11 in the subdivision.
On October 11, 1974, the Nalls executed an oil, gas, and mineral lease of the entire Stately Pines subdivision to Exxon. In that lease the Nalls deleted the warranty clause. The lease granted to Exxon 13/16 of the Nalls' undivided 1/2 mineral interest to Exxon as a working interest and retained 13/16 of the Nalls' undivided 1/2 mineral interest as a royalty interest for the Nalls. That lease was recorded in the office of the judge of probate on April 2, 1975.
I. The Waite Conveyance.
On April 25, 1973, the Nalls conveyed by warranty deed lots 10 and 11 of the Stately Pines Subdivision to Robert R. Waite and his wife, Margie N. Waite. The deed, which was prepared by the Nalls, contained the following language: "Oil and mineral rights reserved by former owners."
On July 30, 1975, the Waites executed an oil, gas, and mineral lease to Clifford O. Rudder. On April 26, 1983, Rudder assigned his interest in the lease to Relco, Inc.
On January 4, 1984, the Waites and Relco, Inc., sued the Nalls and Exxon to quiet title to the undivided 1/2 mineral interest in lots 10 and 11. The Nalls and Exxon filed an answer and a counterclaim to quiet title to lots 10 and 11.
The Waites claim the undivided 1/2 royalty interest, and Relco claims the undivided 1/2 working interest in lots 10 and 11. However, the Nalls also claim the undivided 1/2 royalty interest, and Exxon also claims the undivided 1/2 working interest in lots 10 and 11.
II. The Lloyd Conveyance.
On April 25, 1973, the Nalls conveyed by warranty deed lot 9 of the Stately Pines Subdivision to Michael Terry Lloyd and his wife, Brenda K. Lloyd. The deed, which was prepared by the Nalls, contained the following language: "Oil and mineral rights reserved by former owners."
On November 19, 1975, the Lloyds executed an oil, gas, and mineral lease to Edward P. Turner, Jr. That lease was recorded in the office of the judge of probate on December 3, 1975.
On July 29, 1985, the Lloyds and Edward Turner filed suit against the Nalls and Exxon to quiet title to an undivided 1/2 mineral interest in lot 9. The Nalls and Exxon filed an answer and a counterclaim to quiet title to lot 9.
The Lloyds claim the undivided 1/2 royalty interest, and Turner claims the undivided 1/2 working interest in lot 9. However, the Nalls also claim the undivided 1/2 royalty interest, and Exxon also claims the undivided 1/2 working interest in lot 9.
III. The Lowery (Whitehead) Conveyance.
On August 13, 1973, the Nalls conveyed by warranty deed lot 5 of the Stately Pines Subdivision to Jerry Lowery. The deed, which was prepared by the Nalls, contained the following language: "All oil and mineral rights reserved by former owners." The deed from the Nalls to Lowery was not recorded in the office of the judge of probate until August 18, 1975.
On January 9, 1980, Lowery purported to convey all of his 1/2 interest in the minerals to J.S. Roberts, Jr. That deed was recorded in the office of the judge of probate on January 17, 1980. On December 7, 1981, Roberts purported to convey his interest by deed to John J. Whitehead. That deed was recorded in the office of the judge of probate on December 11, 1981. *Page 943 
On June 29, 1982, Whitehead's attorney forwarded to Exxon a title opinion regarding the mineral interest in lot 5. Thereafter, Exxon began making royalty payments to Whitehead, which continued until October 27, 1983, when they were suspended.
On July 29, 1985, Whitehead sued the Nalls and Exxon to quiet title to an undivided 1/2 mineral interest in lot 9. The Nalls and Exxon filed an answer and counterclaim to quiet title to lot 9.
Whitehead claims the undivided 1/2 mineral interest in lot 5. However, the Nalls claim the undivided 1/2 royalty interest, and Exxon claims the undivided 1/2 working interest in lot 5.
The Waite, Lloyd, and Whitehead cases were consolidated for trial, upon a motion by Exxon. On March 19, 1986, the trial court held that the three deeds were not ambiguous and heard testimony only on the question of whether Exxon was a bona fide purchaser of the mineral interest in lot 5 with reference to the Whitehead conveyance.
The trial court held that the language "oil and mineral rights reserved by former owners" was not an effective reservation of the mineral rights by the Nalls.[1] The trial court quieted title to the undivided 1/2 mineral interest in lots 10 and 11 in favor of the Waites and Relco; quieted title to the undivided 1/2 mineral interest in lot 9 in favor of the Lloyds and Turner; quieted title to the undivided 1/2 mineral interest in lot 5 in favor of Whitehead as to the Nalls' reserved royalty interest under their lease to Exxon, but in favor of Exxon as a bona fide purchaser for value as to the working interest under the Nalls' lease.
The Nalls and Exxon appeal from the judgments in favor of the Waites, Relco, the Lloyds, and Turner. Whitehead appeals from the judgment in favor of Exxon holding that Exxon was a bona fide purchaser, and Exxon and the Nalls cross appeal from that judgment insofar as it construed the language of the purported reservation against them.
In Financial Investment Corp. v. Tuka-batchee Area Council,353 So.2d 1389, 1391 (Ala. 1977), this Court stated the basic objectives in construing the terms of a deed:
 "It is, of course, a fundamental rule of construction that the real inquiry in construing the terms of a deed is to ascertain the intention of the parties, especially that of the grantor, and if that intention can be ascertained from the entire instrument, resort to arbitrary rules of construction is not required. Wilkins v. Ferguson, 294 Ala. 25, 310 So.2d 879 (1975); Gulf Oil Corp. v. Deese, 275 Ala. 178, 153 So.2d 614 (1963).
 "The courts, in construing conveyances, must ascertain and give effect to the intention and meaning of the parties, 'to be collected from the entire instrument.' Brashier v. Burkett, 350 So.2d 309 (Ala. 1977); Stratford v. Lattimer, 255 Ala. 201, 50 So.2d 420 (1951).
 ". . . [W]here a deed is of doubtful meaning, or where the language of a deed is ambiguous, the intent of the parties to the deed as to what property is conveyed may be ascertained by reference to facts existing when the instrument was made, to which the parties may be presumed to have had reference. Lietz v. Pfuehler, 283 Ala. 282, 215 So.2d 723 (1968).
 "However, if the language is plain and certain, acts and declarations of the parties cannot be resorted to, to aid construction. Id., Hall v. Long, 199 Ala. 97, 74 So. 56 (1916).
". . . .
 "In ascertaining the intention of the parties, the plain and clear meaning of the deed's terms must be given effect, and parties must be legally presumed to have intended what is plainly and clearly set out. Camp v. Milam, 291 Ala. 12, 277 So.2d 95 (1973)." *Page 944 
(Emphasis original.) See also Howell Petroleum Corp. v.Holliman, 504 So.2d 277, 278 (Ala. 1987).
At trial, while all the parties argued that the language in the deeds purporting to reserve a mineral interest was unambiguous, they differed in their interpretation of what the purported reservation was intended to mean. Thus, the dispositive issue is whether the language "oil and mineral rights reserved by former owners" is ambiguous.
After considering the language within the four corners of the deeds, we disagree with the trial court's holding that the language of the reservation is unambiguous and that it clearly reserves all oil and mineral rights. On the one hand, we would have to strain the meaning of "former owners" to assume that the phrase should be taken as including the grantors, the Nalls. The deeds were prepared by the Nalls; can they be "former owners"? At the time they wrote the words "former owners," the Nalls were the present owners. When making reference to minerals reserved by "former owners" the Nalls could have been referring to owners who had preceded them in the chain of title, i.e., the Clevelands. Therefore, it could be interpreted that the Nalls could have been making their conveyance subject to all reservations of minerals by owners prior to themselves in the chain of title, in order to protect their warranty.
On the other hand, it could also be determined that "former owners" would include the Nalls as well as the Clevelands.Webster's New Collegiate Dictionary (1980 ed.) defines "former" as "coming before in time; of, relating to, or occurring in the past; preceding in place or arrangement; foregoing; first mentioned or in order of two things mentioned or understood; preceding." Thus, given the sequence of the deeds, C.M. Cleveland became a "former owner" upon delivery of his deed to Ora Harwell, and the Nalls became "former owners" upon delivery of the deeds to the Waites, the Lloyds, and Lowery. One might ask why the Nalls would have included the language in the deeds unless they intended to reserve the mineral rights to themselves as "former owners."
Does "former owner" mean only owners who came before the Nalls in the chain of title, or does it include the Nalls, who were the "present" owners at the time the phrase was inserted in the deed? We think it conceivably could mean either.[2] We hold that the purported reservation language used by the Nalls in the conveyances is ambiguous; therefore, we need not reach the issue of whether Exxon was a bona fide purchaser for value as to the working interest under Whitehead's claim. We, therefore, reverse the judgments and remand the cases to the trial court for testimony relating to extraneous evidence of the acts and declarations of the parties in order to determine the intent of the grantors — the Nalls.
88-1188 REVERSED AND REMANDED.
88-1189 REVERSED AND REMANDED.
88-1340 REVERSED AND REMANDED.
88-1346 REVERSED AND REMANDED.
88-1381 REVERSED AND REMANDED. *Page 945 
HORNSBY, C.J., and MADDOX, JONES, SHORES, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
[1] We note that the Lowery deed provides "All oil and mineral rights are reserved by former owners," while the Lloyd and Waite deeds provide "oil and mineral rights reserved by former owners" — the only difference between the three deeds being the words "All" and "are."
[2] Our research has revealed only two other cases where a purported reservation contained the words "former owners." Unfortunately, those cases do not turn on the language of "former owners." In Central Oil Co. v. Shows, 246 Miss. 300,149 So.2d 306 (1963), the deed contained the following language: "* * * less such minerals as have heretofore been sold or reserved by former owners." In Merchants Manufacturers Bank v. Dennis, 229 Miss. 447, 91 So.2d 254
(1956), one of the deeds contained the following language:
 "An undivided one-half (1/2) interest in and to all oil, gas and other minerals in, on and under the above described lands, having been heretofore conveyed or reserved by former owners, is excepted from this conveyance. By this conveyance, grantors convey and warrant unto grantee the above described lands and an undivided one-half (1/2) interest in and to all of the oil, gas and other minerals in, on and under the above-described lands."