ADAMS, Justice.
This is the second time this case has come before this Court. In the first appeal, this Court remanded the case to the trial court for a determination of the intent of the parties with regard to certain language in deeds that this Court found to be ambiguous. The facts of the case were succinctly set forth in Exxon Corp. v. Waite, 564 So.2d 941 (Ala.1990), and, for the convenience of the reader, the statement of facts from that opinion, along with part of our discussion of those facts, is quoted here:
“These appeals involve three consolidated actions to quiet title to an undivided V2 mineral interest in four residential lots in Mobile County. The dispute arose from a purported reservation of the mineral interest in the deeds from the developer of the subdivision.
“The parties all initially share a common chain of title. On September 1, 1949, C.M. Cleveland and his wife, Elizabeth Cleveland, conveyed 386 acres of land to Ora Harwell. In the conveyance, the Clevelands reserved an undivided ½ interest in the oil, gas, and minerals. The Clevelands’ mineral reservation is not in dispute.
“On March 5, 1962, Ora Harwell and his wife, Irene Harwell, conveyed the property they had received from the Clevelands, including their undivided V2 mineral interest, to Ivan H. Nall and his wife, Virginia Grace Nall. The deed from the Harwells to the Nalls did not contain a reservation of the mineral interest; therefore, the Nalls received the 386 acres and the Harwells’ undivided V2 mineral interest. The Nalls subdivided a portion of the land they had obtained from the Harwells into the Stately Pines Subdivision. The Nalls subsequently conveyed lots 5, 9, 10, and 11 in the subdivision.
“On October 11, 1974, the Nalls executed an oil, gas, and mineral lease of the *48 entire Stately Pines subdivision to Exxon. In that lease the Nalls deleted the warranty clause. The lease granted to Exxon 3/i6 of the Nalls’ undivided ½ mineral interest to Exxon as a working interest and retained ¥16 of the Nalls' undivided lk mineral interest as a royalty interest for the Nalls. That lease was recorded in the office of the judge of probate on April 2, 1975.
“I. The Waite Conveyance.
“On April 25, 1973, the Nalls conveyed by warranty deed lots 10 and 11 of the Stately Pines Subdivision to Robert R. Waite and his wife, Margie N. Waite. The deed, which was prepared by the Nalls, contained the following language: ‘Oil and mineral rights reserved by former owners.’
“On July 30,1975, the Waites executed an oil, gas, and mineral lease to Clifford 0. Rudder. On April 26, 1983, Rudder assigned his interest in the lease to Rel-eo, Inc.
“On January 4, 1984, the Waites and Releo, Inc., sued the Nalls and Exxon to quiet title to the undivided ⅛ mineral interest in lots 10 and 11. The Nalls and Exxon filed an answer and a counterclaim to quiet title to lots 10 and 11.
“The Waites claim the undivided ½ royalty interest, and Releo claims the undivided ⅛ working interest in lots 10 and 11. However, the Nalls also claim the undivided ½ royalty interest, and Exxon also claims the undivided ½ working interest in lots 10 and 11.
“II. The Lloyd Conveyance.
“On April 25, 1973, the Nalls conveyed by warranty deed lot 9 of the Stately Pines Subdivision to Michael Terry Lloyd and his wife, Brenda K. Lloyd. The deed, which was prepared by the Nalls, contained the following language: ‘Oil and mineral rights reserved by former owners.’
“On November 19, 1975, the Lloyds executed an oil, gas, and mineral lease to Edward P. Turner, Jr. That lease was recorded in the office of the judge of probate on December 3, 1975.
“On July 29, 1985, the Lloyds and Edward Turner filed suit against the Nalls and Exxon to quiet title to an undivided ⅝ mineral interest in lot 9. The Nalls and Exxon filed an answer and a counterclaim to quiet title to lot 9.
“The Lloyds claim the undivided xh royalty interest, and Turner claims the undivided ⅝ working interest in lot 9. However, the Nalls also claim the undivided xk royalty interest, and Exxon also claims the undivided ½ working interest in lot 9.
“III. The Lowery (Whitehead) Conveyance.
“On August 13, 1973, the Nalls conveyed by warranty deed lot 5 of the Stately Pines Subdivision to Jerry Lowery. The deed, which was prepared by the Nalls, contained the following language: ‘All oil and mineral rights reserved by former owners.’ The deed from the Nalls to Lowery was not recorded in the office of the judge of probate until August 18, 1975.
“On January 9, 1980, Lowery purported to convey all of his lk interest in the minerals to J.S. Roberts, Jr. That deed was recorded in the office of the judge of probate on January 17,1980. On December 7, 1981, Roberts purported to convey his interest by deed to John J. Whitehead. That deed was recorded in the office of the judge of probate on December 11, 1981.
“On June 29, 1982, Whitehead’s attorney forwarded to Exxon a title opinion regarding the mineral interest in lot 5. Thereafter, Exxon began making royalty payments to Whitehead, which continued until October 27, 1983, when they were suspended.
“On July 29, 1985, Whitehead sued the Nalls and Exxon to quiet title to an undivided ¾⅛ mineral interest in lot 9. The Nalls and Exxon filed an answer and counterclaim to quiet title to lot 9.
“Whitehead claims the undivided ½ mineral interest in lot 5. However, the Nalls claim the undivided xk royalty interest, and Exxon claims the undivided ½ working interest in lot 5.
*49 “The Waite, Lloyd, and Whitehead cases were consolidated for trial, upon a motion by Exxon. On March 19, 1986, the trial court held that the three deeds were not ambiguous and heard testimony only on the question of whether Exxon was a bona fide purchaser of the mineral interest in lot 5 with reference to the Whitehead conveyance.
“The trial court held that the language ‘oil and mineral rights reserved by former owners’ was not an effective reservation of the mineral rights by the Nalls. The trial court quieted title to the undivided ½ mineral interest in lots 10 and 11 in favor of the Waites and Releo; quieted title to the undivided ½ mineral interest in lot 9 in favor of the Lloyds and Turner; quieted title to the undivided ½ mineral interest in lot 5 in favor of Whitehead as to the Nalls’ reserved royalty interest under their lease to Exxon, but in favor of Exxon as a bona fide purchaser for value as to the working interest under the Nalls’ lease.
“The Nalls and Exxon appeal from the judgments in favor of the Waites, Releo, the Lloyds, and Turner. Whitehead appeals from the judgment in favor of Exxon holding that Exxon was a bona fide purchaser, and Exxon and the Nalls cross appeal from that judgment insofar as it construed the language of the purported reservation against them.
[[Image here]]
“At trial, while all the parties argued that the language in the deeds purporting to reserve a mineral interest was unambiguous, they differed in their interpretation of what the purported reservation was intended to mean. Thus, the dispositive issue is whether the language ‘oil and mineral rights reserved by former owners’ is ambiguous.
“After considering the language within the four corners of the deeds, we disagree with the trial court’s holding that the language of the reservation is unambiguous and that it clearly reserves all oil and mineral rights. On the one hand, we would have to strain the meaning of ‘former owners’ to assume that the phrase should be taken as including the grantors, the Nalls. The deeds were prepared by the Nalls; can they be ‘former owners’? At the .time they wrote the words ‘former owners,’ the Nalls were the present owners. When making reference to minerals reserved by ‘former owners’ the Nalls could have been referring to owners who had preceded them in the chain of title, i.e., the Cleve-lands. Therefore, it could be interpreted that the Nalls could have been making their conveyance subject to all reservations of minerals by owners prior to themselves in the chain of title, in order to protect their warranty.
“On the other hand, it could also be determined that ‘former owners’ would include the Nalls as well as the Cleve-lands. Webster’s New Collegiate Dictionary (1980 ed.) defines ‘former’ as ‘coming before in time; of, relating to, or occurring in the past; preceding in place or arrangement; foregoing; first mentioned or in order of two things mentioned or understood; preceding.’ Thus, given the sequence of the deeds, C.M. Cleveland became a ‘former owner’ upon delivery of his deed to Ora Harwell, and the Nalls became ‘former owners’ upon delivery of the deeds to the Waites, the Lloyds, and Lowery. One might ask why the Nalls would have included the language in the deeds unless they intended to reserve the mineral rights to themselves as ‘former owners.’
“Does ‘former owner’ mean only owners who came before the Nalls in the chain of title, or does it include the Nalls, who were the ‘present’ owners at the time the phrase was inserted in the deed? We think it conceivably could mean either. We hold that the purported reservation language used by the Nalls in the conveyances is ambiguous....”
Exxon Corp. v. Waite, 564 So.2d 941, 941-44 (Ala.1990).
On remand, the trial court determined that the Nalls had not reserved for themselves the disputed ¾⅛ mineral interest, but that the ambiguous phrases in the deeds were intended to protect their warranty. The trial court heard the testimony *50 without a jury; therefore, the following rule applies:
“Under the ‘ore tenus rule,’ a presumption of correctness accompanies the trial court’s judgment when it has made findings of fact based on oral testimony without a jury, and its judgment will not be reversed unless it is shown to be plainly and palpably wrong, considering all the evidence and all inferences that can be logically drawn from the evidence. King v. Travelers Ins. Co., 513 So.2d 1023 (Ala.1987); McCrary v. Butler, 540 So.2d 736 (Ala.1989). The trial court’s judgment in such a case will be affirmed, if, under any reasonable aspect of the testimony, there is credible evidence to support the judgment. McCrary v. Butler, supra; Jones v. Jones, 470 So.2d 1207 (Ala.1985).”
Clark v. Albertville Nursing Home, Inc., 545 So.2d 9, 12-13 (Ala.1989).
The trial court heard testimony from Mr. Waite, to the effect that Mr. Nall had told him when questioned regarding the mineral interest as to the two lots Mr. Waite was considering purchasing that a prior owner had retained ½ of the mineral interest and that “he [Mr. Nall] only had half that he could give [them].” There was other evidence offered that tended to show that the Nalls did not intend to retain the disputed mineral interest and, although there was conflicting testimony regarding the intentions of the parties, the trial court did hear sufficient testimony tending to support its finding that the parties, at the time of the conveyances, intended to convey the disputed mineral interest. Therefore the findings of the trial court are not plainly and palpably wrong and will not be reversed.
In the original appeal of this case, we postponed consideration of the Whiteheads’ argument that the trial court’s finding that Exxon was a bona fide purchaser for value with regard to the working interest of the Whitehead conveyance was error. We stated:
“We hold that the purported reservation language used by the Nalls in the conveyances is ambiguous; therefore, we need not reach the issue of whether Exxon was a bona fide purchaser for value as to the working interest under Whitehead’s claim.”
Id. at 944. Because the reservation issue has been resolved in favor of the Whiteheads, it is now appropriate for us to address the issue of whether Exxon was, in fact, a bona fide purchaser for value with regard to the working interest of the Whitehead mineral rights. It is uncontested that the lease between Exxon and the Nalls, which included the mineral rights to the Whiteheads’ lot, was recorded before the deed issued by Nall to Lowery was recorded.
“If a deed conveying real property is not recorded, it is void as to a subsequent party who purchases without notice of the prior deed. Code 1975, § 35-4-90(a). ‘[W]hatever is sufficient to excite attention and put the party on his guard and call for inquiry is notice of everything to which the inquiry would have led; ... one who has knowledge of facts sufficient to put him on inquiry as to the existence of an unrecorded deed is not a purchaser without notice within the protection of the registry statutes.’ Jefferson County v. Mosley, 284 Ala. 593, 599, 226 So.2d 652, 656 (1969) (citations omitted).”
White v. Boggs, 455 So.2d 820, 821 (Ala.1984). It is important to note that a rec-ordation of the Lowery deed, in this instance, would have notified Exxon that Lowery had at least an arguable claim to the disputed mineral interest. Even if, at the time the lease was entered into, the Lowerys had begun building on the lot in question, the disputed rights are subsurface rights, easily and often retained by former owners. Thus, a change in surface ownership, without recordation of the deed, would not necessarily place a subsurface lessee on notice of a deed transferring the mineral rights.
For the foregoing reasons, the judgment of the trial court is hereby affirmed.
AFFIRMED.
*51 HORNSBY, C.J., and SHORES, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.